DAN RAYFIELD
Attorney General
COBY HOWELL #T25051904
BRIAN SIMMONDS MARSHALL #196129
JOANNA HERSHEY #152665
Senior Assistant Attorneys General
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Coby.Howell@doj.oregon.gov
       Brian.S.Marshall@doj.oregon.gov
       Joanna.Hershey@doj.oregon.gov

Attorneys for State of Oregon

*[counsel for additional parties in signature block]*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON COUNCIL FOR THE HUMANITIES d/b/a OREGON HUMANITIES, a nonprofit corporation; FEDERATION OF STATE HUMANITIES COUNCILS, a nonprofit corporation,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED STATES DOGE SERVICE, a component of the Executive Office of the President; AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service; NATIONAL ENDOWMENT FOR THE HUMANITIES, an independent federal agency, and its advisory council NATIONAL COUNCIL ON THE HUMANITIES; MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment for the Humanities,<br><br>        Defendants. | Case No.  3:25-cv-00829-SI<br><br>BRIEF OF AMICUS CURIAE STATES OF OREGON, MARYLAND, WASHINGTON, ARIZONA, COLORADO, CONNECTICUT; DELAWARE, HAWAIʻI, MAINE, MICHIGAN, NEVADA, NEW MEXICO, RHODE ISLAND, WISCONSIN, VERMONT, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

BRIEF OF AMICUS CURIAE
CCH/sv3/992828022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTEREST OF AMICI CURIAE ........................................................... 1

II.   BACKGROUND ...................................................................................... 2

    A.    The District Court has subject matter jurisdiction over Plaintiffs' claims.............. 7

        1.    Plaintiffs do not seek money damages....................................... 8

        2.    The Tucker Act does not divest this Court of subject matter jurisdiction. .................. 9

        3.    Plaintiffs have no adequate remedy under the Tucker Act. ...................... 11

        4.    The Supreme Court's per curiam stay order in *Department of Education v. California* does not resolve the jurisdictional questions presented in this case. ........................... 12

    B.    A preliminary injunction is warranted. ..................................... 15

        1.    Plaintiffs have established a likelihood of success on the merits. ............ 15

        2.    Defendants' abrupt policy changes and communications irreparably harm Plaintiffs. ...................... 18

        3.    The public interest strongly favors granting a preliminary injunction. ............................... 19

III.  CONCLUSION......................................................................................... 20

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)...........................................................................................8

*Aids Vaccine Advocacy Coal. v. U.S. Dep't of State*,
770 F. Supp. 3d 121 (D.D.C. 2025), *stay denied*, 145 S.Ct. 753 (2025) ...........11

*Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ...........................................................................10

*Amerijet Int'l v. Pistole*,
753 F.3d 1343 (D.C. Cir. 2014) ........................................................................15

*Armstrong v. Exceptional Child Ctr.*,
575 U.S. 320 (2015).............................................................................................7

*Bernhardt v. Los Angeles County*,
339 F.3d 920 (9th Cir. 2003) ............................................................................19

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)........................................................................9, 12, 13, 14

*Cassell v. Snyders*,
990 F.3d 539 (7th Cir. 2021) ............................................................................19

*Climate United Fund v. Citibank, N.A.*,
No. 25-cv-698 (TSC), 2025 WL 1131412 (D.D.C. Apr. 16, 2025)...................14

*Clinton v. City of New York*,
524 U.S. 417 (1998)...........................................................................................17

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*,
No. 25-cv-02847-AMO, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) ....................14, 18

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*,
137 F.4th 932 (9th Cir. 2025) .........................................................9, 10, 11, 15

*Commonwealth of Puerto Rico v. United States*,
490 F.3d 50 (1st Cir. 2007)..................................................................................8

*Crowley Gov't Servs. v. GSA*,
38 F.4th 1099 (D.C. Cir. 2022) ...................................................................10, 14

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

*Dep't of the Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999)......................................................................................................9

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)....................................................................................................15

*Dep't of Educ. v. California*,
    604 U.S. __, 145 S. Ct. 966 (2025)..................................................................12, 13, 14

*Dep't of Educ. v. California*,
    No. 1:25-cv-10548-MJJ, ECF 55 (D. Mass. Mar. 12, 2025)..........................................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)......................................................................................................16

*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018)...........................................................................17

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)....................................................................................................9

*Katz v. Cisneros*,
    16 F.3d 1204 (Fed. Cir. 1994)....................................................................................10

*Kichatov v. Nationstar Mortg.*,
    No. 3:13-CV-00103-BR, 2013 WL 3025981 (D. Or. June 14, 2013)..............................11

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)........................................................................................19

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
    No. DLB-25-1363, 2025 WL 1585051 (D. Md. June 5, 2025)..................................11, 14

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982)....................................................................................10

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022)................................................................................................13

*Me. Cmty. Health Options v. United States*,
    590 U.S. 296 (2020)..............................................................................................11, 12

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins.*,
    463 U.S. 29 (1983)....................................................................................................15

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................................................19

CCH/sv3/992828022

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

*Pacito v. Trump*,
    No. 2:25-cv-255-JNW, 2025 WL 1077401 (W.D. Wash. Apr. 9, 2025)..........................14

*Planned Parenthood of N.Y.C. v. U.S. Dep't of Health & Hum. Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018) ................................................................19

*Reyes-Gaona v. N.C. Growers Ass'n*,
    250 F.3d 861, 865 (4th Cir. 2001) ....................................................................11

*Rhode Island v. Trump*,
    No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025) ..........13, 14. 17, 18

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ..........................................................................19

*S. Educ. Found. v. U.S. Dep't of Educ.*,
    No. 25-1079 (PLF), 2025 WL 1453047 (D.D.C. May 21, 2025) .....................................14

*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Urb. Dev.*,
    480 F.3d 1116 (Fed. Cir. 2007)..........................................................................11

*Sustainability Inst. v. Trump*,
    No. 2:25-cv-2152-RMG, 2025 WL 1486978 (D.S.C. Apr. 29, 2025)........................14, 15

*United Aeronautical Corp. v. U.S. Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ........................................................................9, 10

*Washington v. Reno*,
    35 F.3d 1093, 1103 (6th Cir. 1994) ...................................................................19

*Winter v. NRDC*,
    555 U.S. 7 (2008)...................................................................................15, 19

## STATUTES, RULES, AND REGULATIONS

5 U.S.C. 702...............................................................................................8, 9

5 U.S.C. 704...............................................................................................8, 11

5 U.S.C. 706..............................................................................................10, 15

20 U.S.C. § 951...........................................................................................1, 2, 5

20 U.S.C. § 954.............................................................................................2, 3

20 U.S.C. § 956 ..........................................................................................*passim*

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

28 U.S.C. § 1331 ...........................................................................................................7

28 U.S.C. § 1491 ...................................................................................................2, 9, 10

Arts, Humanities, and Cultural Affairs Act of 1976,
    Pub. L. 94-462, 90 Stat. 1971 (Oct. 8, 1976) ...................................................2

Full-Year Continuing Appropriations and Extensions Act, 2025,
    Pub. L. 119-4, 139 Stat. 11 (Mar. 15, 2025) ...................................................6

Consolidated Appropriations Act, 2024,
    Pub. L. 118-42, 138 Stat. 281 (Mar. 9, 2024) .................................................6

National Foundation on the Arts and Humanities Act of 1965,
    Pub. L. No. 89-209, 79 Stat. 845 (Sept. 29, 1965) ..........................................1

Fed. R. Civ. P. 65 ........................................................................................................15

**CONSTITUTIONS**

U.S. Const. art. I, §§ 1, 8 .............................................................................................17

U.S. Const. art. II, § 3 .................................................................................................17

**OTHER**

126 Cong. Rec. S1282 (Feb. 7, 1980) .........................................................................16

170 Cong. Rec. S1859 (Mar. 5, 2024) ..........................................................................6

*2024 Annual Report*, Or. Humanities (May 20, 2025),
    https://www.oregonhumanities.org/who/annual-report/ ....................................4

*2025 Grant-in-Aid for Arts and Culture*, Haw. State Found. on Culture & the Arts (May
    16, 2025), https://sfca.hawaii.gov/2025-grant-in-aid-for-arts-and-culture/ .......................3

*About the National Endowment for the Humanities*, NEH, https://www.neh.gov/about
    (last visited July 2, 2025) ................................................................................18

*Arizona Humanities Awards*, Az. Humanities, https://azhumanities.org/awards/ (last
    visited July 2, 2025) ...........................................................................................3

Clarie Rush & Gary Fields, *Plans to celebrate America's 250th anniversary were
    underway. Then came the federal funding cuts*, AP News (Apr. 15, 2025 at 9:03
    PT), https://apnews.com/article/federal-cuts-humanities-america250-anniversary-
    doge-572cf095773c66856a1da94030ffd5a9 .....................................................7

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

Del. Humanities, *Annual Report 2024*, https://dehumanities.org/wp-content/uploads/2025/04/2024-Annual-Report-FIXED.pdf ...........................................3, 4

*FY2024 Audited Financials*, Mich. Humanities, https://www.michiganhumanities.org/about/annual-reports/ (last visited July 2, 2025) ....................................................................................................................3

Haw. State Legis., *2026 Final Operating and Capital Grant-in-Aid* (Apr. 21, 2025), https://www.capitol.hawaii.gov/sessions/session2025/Docs/GIA/HB300_CD1.pdf ..........3

*Hawaiʻi State Poet Laureate*, Haw. Council for the Humanities, https://hihumanities.org/na-mana-wai-telling-our-own-stories/hawai%ca%bbi-state-poet-laureate/ (last visited July 2, 2025) ...................................................................5

*Humanities Grants*, Mich. Humanities, https://www.michiganhumanities.org/humanities-grants/ (last visited July 2, 2025) ......................................................................................7

*Humanity in Perspective*, Or. Humanities, https://www.oregonhumanities.org/programs/humanity-in-perspective/ (last visited July 2, 2025)...............................................................................................................5, 7

*Humanities Iowa redesignated as the state humanities council*, ia Mag. (Mar. 14, 2025), https://iapublication.com/humanities-iowa-redesignated-as-the-state-humanities-council/...............................................................................................................................3

*Impact in States & Jurisdictions*, NEH, https://www.neh.gov/impact/states (last visited July 2, 2025)...............................................................................................................1

*In re Inst. of Museum & Library Servs.*, No. B-337375 (Comp. Gen. June 16, 2025), https://www.gao.gov/assets/880/878908.pdf.............................................................17

Letter from Christopher Kaufman Ilstrup, Exec. Dir., Vt. Humanities, to Rep. Robin Scheu, Chair, Vt. H. Appropriations Comm. (Feb. 14, 2025), https://ljfo.vermont.gov/assets/Uploads/WChristopher-Kaufman-IlstrupVermont-Humanities-FY26-Budget2-18-2025.pdf............................................................3

*Maryland Humanities*, Md. Manual On-Line, https://msa.maryland.gov/msa/mdmanual/25ind/priv/html/human.html (last visited July 2, 2025)..................................................................................................3, 4, 5

*Maryland History Day Showcase*, Md. State Dep't of Educ., https://marylandpublicschools.org/about/Pages/DCAA/Social-Studies/MHDS/index.aspx (last visited July 2, 2025) .......................................................5

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

Md. State Dep't of Educ., *Budget—State Aid to Educational Organizations*, Md. Manual On-Line, https://msa.maryland.gov/msa/mdmanual/13sdoe/html/sdoeb.html (last visited July 2, 2025)...................................................................................................4

*Meet the Washington State Poet Laureate*, Humanities Wash. (2025), https://www.humanities.org/programs/washington-state-poet-laureate/ ............................5

Memorandum to Members of the National Council on the Humanities re State-Based Public Humanities Programs 1 (Aug. 11, 1970), https://neh.dspacedirect.org/items/ca08fcd9-3b62-4275-b56b-bd2d8abd0fb3 ..................2

Me. State Legis. Off. Fiscal & Program Rev., *General Fund Appropriations 2024–2025 Biennium*, 1st Sess., at 252 (2023), https://legislature.maine.gov/doc/10982 ....................3

*NEH Cuts FAQs*, Del. Humanities, https://dehumanities.org/neh-faqs/ (last visited July 2, 2025) ................................................................................................................3

NEH, *Fiscal Year 2025 Congressional Justification* 55 (Mar. 2024), https://www.neh.gov/sites/default/files/inline-files/NEH%20FY%202025%20Congressional%20Justification%20%28CJ%29.pdf ..........................................................................................................................4

Or. Cultural Trust, *Impacts of the Oregon Cultural Trust and the Cultural Tax Credit* 18 (2018), https://www.culturaltrust.org/wp-content/uploads/OCT-Insights.pdf ...................4

*Overview of Grants at CT Humanities*, Conn. Humanities, https://cthumanities.org/grants/ (last visited July 2, 2025)...................................................................................................3

*Read ME*, Me. Humanities Council, https://www.mainehumanities.org/programs-grants/read-me/ (last visited July 2, 2025)...................................................................5

R.I. Humanities, Press Release, *Rhode Island Humanities Celebrates State-Funded THRIVE Grants at the State House Library* (Apr. 30, 2025) ..............................................5

S. Rep. No. 94-1260 (1976) ....................................................................................................2

*Who we are*, Community Powered, https://communitypoweredwi.org/about/ (last visited July 2, 2025.................................................................................................................4, 7

Wis. Humanities, 2023 IRS Form 990, Schedule O (Feb. 25, 2025)......................................3

*Wisconsin Humanities' Launches Tribal Health Initiative*, Wis. Humanities, https://wisconsinhumanities.org/wisconsin-humanities-launches-tribal-health-initiative/ (last visited July 2, 2025)........................................................................4

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

## I.    INTEREST OF AMICI CURIAE

The Amici States of Oregon, Maryland, Washington, Arizona, Colorado, Connecticut, Delaware, Hawaiʻi; Maine, Michigan, Nevada, New Mexico, Rhode Island, Wisconsin, Vermont, and the District of Columbia file this brief in support of Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 7).  The Amici States are home to state humanities councils whose grants from the National Endowment for the Humanities ("NEH") were unlawfully terminated.  The Amici States file this brief to highlight the interests of their residents and institutions that benefit directly and indirectly from the federal government's investments in American culture and to defend the legal principles that Defendants' conduct violates.

"Democracy demands wisdom and vision in its citizens."  20 U.S.C. § 951(4).  Congress passed the National Foundation on the Arts and Humanities Act of 1965, Pub. L. No. 89-209, 79 Stat. 845 (Sept. 29, 1965) (codified as amended at 20 U.S.C. §§ 951–960), to "foster and support a form of education, and access to the arts and the humanities, designed to make people of all backgrounds and wherever located masters of their technology and not its unthinking servants." 20 U.S.C. § 951(4).  Forty percent of NEH's program funds go directly to a network of state and territorial humanities councils represented by the Federation of State Humanities Councils ("FSHC") in this case.[1]  Each of the Amici States is home to a humanities council that works as Congress directed to "furnish adequate programs in the humanities in each of the several States." 20 U.S.C. § 956(f)(1).

The Amici States also file this brief to request that the Court uphold important legal principles that Defendants' conduct threatens.  "Public funds provided by the Federal Government must ultimately serve public purposes the *Congress* defines."  20 U.S.C. § 951(5) (emphasis added).  The summary termination of grants to FSHC's member councils appears to be part of a wide-ranging campaign by the Trump Administration to unlawfully dismantle

---

[1] *Impact in States & Jurisdictions*, NEH, https://www.neh.gov/impact/states (last visited July 2, 2025).

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

congressionally mandated programs it dislikes. Across the country, the Amici States have successfully challenged the Administration's attempts to terminate federal grant programs as arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act ("APA"). Here too, the Court should reiterate that federal district courts have jurisdiction over claims that the Federal Government has violated the APA by wrongfully terminating awards of federal grant money, notwithstanding Defendants' anticipated argument that the Tucker Act (28 U.S.C. § 1491) deprives this Court of jurisdiction. The Amici States have a strong interest in upholding existing precedent, vindicating separation of powers principles, and enjoining violations of federal law that have caused and, if unchecked, will continue to cause concrete injuries to the States and threaten the constitutional balance of power between the States and the Federal government.

## II.    BACKGROUND

In the National Foundation on the Arts and the Humanities Act of 1965, Congress declared it "necessary and appropriate for the Federal Government to complement, assist, and add to programs for the advancement of the humanities and the arts by local, State, regional, and private agencies and their organizations." 20 U.S.C. § 951(5). Toward that end, Congress passed the Arts, Humanities, and Cultural Affairs Act of 1976, Pub. L. 94-462, § 104(a), 90 Stat. 1971 (Oct. 8, 1976), authorizing NEH "to establish and carry out a program of grants-in-aid in each of the several States . . . in order to develop a program in the humanities in such a manner as will furnish adequate programs in the humanities in each of the several States." 20 U.S.C. § 956(f)(1). Under the statute, the NEH state grant program is carried out through FSHC's member councils, which are 501(c)(3) nonprofits that administer NEH funds for their respective States.[2]

---

[2] The NEH state grant program was modeled after the state grant program of NEH's sister endowment, the National Endowment for the Arts ("NEA"). 20 U.S.C. § 954(g)(1); *see* S. Rep. No. 94-1260, at 16 (1976) (Conf. Rep.); Memorandum to Members of the National Council on

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

The States maintain close ties with their state humanities councils.  Under 20 U.S.C. § 956(f)(2)(B)(ii), up to a quarter of each humanities council's board is appointed by the State's Governor.  The States also provide material and financial support to their councils.  The Executive Director and Associate Director of Wisconsin Humanities are both employees of the Universities of Wisconsin Administration.[3]  Connecticut's, Maine's, and Vermont's humanities councils all receive appropriations from their state legislatures,[4] while Delaware and Hawai'i award their humanities councils annual grants-in-aid,[5] and Michigan Humanities is supported by a grant from the Michigan Arts and Culture Council.[6]  The Arizona Humanities Awards are sponsored by Arizona State University's College of Liberal Arts and Sciences.[7]  Maryland Humanities receives funding from Maryland Historical Trust and the State Department of

the Humanities re State-Based Public Humanities Programs 1 (Aug. 11, 1970), https://neh.dspacedirect.org/items/ca08fcd9-3b62-4275-b56b-bd2d8abd0fb3.  To receive NEA funds, Congress required that States "designate[] or provide[] for the establishment of a State [arts] agency," 20 U.S.C. § 954(g)(2)(A), but for NEH funds, it allowed States either to designate a state humanities agency or to administer funds through nonprofit state humanities councils, 20 U.S.C. § 956(f)(2)(A).  No State currently has designated a state humanities agency, although at least one—Iowa—has in the recent past.  *See Humanities Iowa redesignated as the state humanities council*, ia Mag. (Mar. 14, 2025), https://iapublication.com/humanities-iowa-redesignated-as-the-state-humanities-council/.

[3] Wis. Humanities, 2023 IRS Form 990, Schedule O (Feb. 25, 2025).

[4] *Overview of Grants at CT Humanities*, Conn. Humanities, https://cthumanities.org/grants/ (last visited July 2, 2025); Me. State Legis. Off. Fiscal & Program Rev., *General Fund Appropriations 2024–2025 Biennium*, 1st Sess., at 252 (2023), https://legislature.maine.gov/doc/10982; Letter from Christopher Kaufman Ilstrup, Exec. Dir., Vt. Humanities, to Rep. Robin Scheu, Chair, Vt. H. Appropriations Comm. (Feb. 14, 2025), https://ljfo.vermont.gov/assets/Uploads/WChristopher-Kaufman-IlstrupVermont-Humanities-FY26-Budget2-18-2025.pdf.

[5] *NEH Cuts FAQs*, Del. Humanities, https://dehumanities.org/neh-faqs/ (last visited July 2, 2025); Del. Humanities, *Annual Report 2024*, https://dehumanities.org/wp-content/uploads/2025/04/2024-Annual-Report-FIXED.pdf; Haw. State Legis., *2026 Final Operating and Capital Grant-in-Aid* (Apr. 21, 2025), https://www.capitol.hawaii.gov/sessions/session2025/Docs/GIA/HB300_CD1.pdf; *see also 2025 Grant-in-Aid for Arts and Culture*, Haw. State Found. on Culture & the Arts (May 16, 2025), https://sfca.hawaii.gov/2025-grant-in-aid-for-arts-and-culture/.

[6] *FY2024 Audited Financials*, Mich. Humanities, https://www.michiganhumanities.org/about/annual-reports/ (last visited July 2, 2025).

[7] *Arizona Humanities Awards*, Az. Humanities, https://azhumanities.org/awards/ (last visited July 2, 2025).

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

Education.[8]  And Oregon Humanities is a "core statewide partner" of the Oregon Cultural Trust, a state entity that in 2024 provided nearly 10 percent of Oregon Humanities' funding.[9]

In return, the state humanities councils—supported by NEH's Office of Federal/State Partnership ("Fed/State")—serve their States.  As Congress directed, the councils "furnish adequate programs in the humanities in each of the several States," 20 U.S.C. § 956(f)(1), by "support[ing] a wide array of humanities activities that are tailored to the resources, demographics, interests, and needs of each state or jurisdiction."[10]  Between 2022 and 2025, for instance, Wisconsin Humanities ran Community Powered, an educational program that "buil[t] resilience in Wisconsin communities by putting the tools of history, culture, and storytelling in the hands of Wisconsinites."[11]  Community Powered won the Federation of State Humanities Council's Schwartz Prize for Outstanding Work in the Public Humanities and was awarded a Community Impact Grant to create a Tribal Health Initiative by the University of Wisconsin School of Medicine and Public Health.[12]  State humanities councils also collaborate directly with State entities.  The Hawaiʻi State Poet Laureate is appointed as part of an initiative among Hawaiʻi Council for the Humanities, the State Foundation on Culture and the Arts, and the

---

[8] *Maryland Humanities*, Md. Manual On-Line, https://msa.maryland.gov/msa/mdmanual/25ind/priv/html/human.html (last visited July 2, 2025); *see* Md. State Dep't of Educ., *Budget—State Aid to Educational Organizations*, Md. Manual On-Line, https://msa.maryland.gov/msa/mdmanual/13sdoe/html/sdoeb.html (last visited July 2, 2025).

[9] *2024 Annual Report*, Or. Humanities (May 20, 2025), https://www.oregonhumanities.org/who/annual-report/; Or. Cultural Trust, *Impacts of the Oregon Cultural Trust and the Cultural Tax Credit* 18 (2018), https://www.culturaltrust.org/wp-content/uploads/OCT-Insights.pdf.

[10] NEH, *Fiscal Year 2025 Congressional Justification* 55 (Mar. 2024), https://www.neh.gov/sites/default/files/inline-files/NEH%20FY%202025%20Congressional%20Justification%20%28CJ%29.pdf (hereinafter "NEH FY25 Congressional Justification").

[11] *Who we are*, Community Powered, https://communitypoweredwi.org/about/ (last visited July 2, 2025).

[12] *Wisconsin Humanities' Launches Tribal Health Initiative*, Wis. Humanities, https://wisconsinhumanities.org/wisconsin-humanities-launches-tribal-health-initiative/ (last visited July 2, 2025).

Page 4 -   BRIEF OF AMICUS CURIAE
CCH/sv3/992828022

Hawaiʻi State Public Library System,[13] while Humanities Washington runs the Washington State Poet Laureate program in partnership with the Washington State Arts Commission (ArtsWA).[14] Maine Humanities partners with the Maine State Library on Read ME, a statewide program that encourages residents to read "books recommended by well-known Maine authors."[15]  In partnership with the State of Rhode Island, Rhode Island Humanities awards THRIVE Grants that provide "a dedicated funding opportunity for small cultural organizations."[16]  Maryland Humanities joins with the Maryland State Department of Education to produce Maryland History Day, for which thousands of "middle and high school students create original projects that explore a historical topic of their choice on an annual theme."[17]  Oregon Humanities partners with Portland State University's College of Liberal Arts and Sciences on Humanity in Perspective, which "offers free, for-credit college-level humanities courses for people who are living on low incomes and/or facing barriers to continuing their education."[18]

NEH funding in support of these efforts "complement[s], assist[s], and add[s] to programs for the advancement of the humanities . . . by local, State, regional, and private agencies."  20 U.S.C. § 951(5).  Fed/State has, for decades, been NEH's largest single program in terms of budget often receiving up to 40 percent of NEH funding.[19]  In Fiscal Years 2024 and

---

[13] *Hawaiʻi State Poet Laureate*, Haw. Council for the Humanities, https://hihumanities.org/na-mana-wai-telling-our-own-stories/hawai%ca%bbi-state-poet-laureate/ (last visited July 2, 2025).

[14] *Meet the Washington State Poet Laureate*, Humanities Wash. (2025), https://www.humanities.org/programs/washington-state-poet-laureate/.

[15] *Read ME*, Me. Humanities Council, https://www.mainehumanities.org/programs-grants/read-me/ (last visited July 2, 2025).

[16] R.I. Humanities, Press Release, *Rhode Island Humanities Celebrates State-Funded THRIVE Grants at the State House Library* (Apr. 30, 2025).

[17] *Maryland History Day Showcase*, Md. State Dep't of Educ., https://marylandpublicschools.org/about/Pages/DCAA/Social-Studies/MHDS/index.aspx (last visited July 2, 2025).

[18] *Humanity in Perspective*, Or. Humanities, https://www.oregonhumanities.org/programs/humanity-in-perspective/ (last visited July 2, 2025).

[19] NEH FY25 Congressional Justification, *supra* note 8, at 55.

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

2025, Congress appropriated $207 million to NEH, *see* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, § 1101(a)(7), 139 Stat. 11 (Mar. 15, 2025) (reappropriating amounts from the Consolidated Appropriations Act, 2024, Pub. L. 118-42, div. E, tit. III, 138 Stat. 281 (Mar. 9, 2024)), of which it directed that $65 million go toward "Federal/State partnership." 170 Cong. Rec. S1859 (Mar. 5, 2024) (Joint Explanatory Statement). NEH duly assigned $65 million to Fed/State in Fiscal Year 2024, the largest line item in the agency's budget.[20] The state humanities councils then used money received from Fed/State to "furnish adequate programs in the humanities." 20 U.S.C. § 956(f)(1).

That federal/state partnership nearly ended in April 2025, when the U.S. DOGE Service began to eliminate Fed/State and terminate its grants. *See* Am. Compl., Dkt. No. 6, ¶¶ 101–04; Jane Doe Decl. ¶ 8 (Dkt. No. 12). On April 2, at DOGE's direction, NEH sent every state humanities council a notice terminating its standard operating grants, as well as special opportunity and competitive grants issued under the Biden Administration. *See* Stein Decl. ¶ 13 (Dkt. No. 20). Although NEH eventually restored less than half the funding that had been terminated—which the then-Director of Fed/State acknowledged "still represent[ed] an incredible hardship"—Defendants still have deprived the state humanities councils of millions of dollars in funding. Davis Decl. ¶ 13 (Dkt. No. 11). And they likewise have contravened Congress's intent—by preventing NEH from ensuring "adequate programs in the humanities in each of the several States." 20 U.S.C. § 956(f)(1).

Due to the funding cuts, many humanities programs already have been cancelled or will not be repeated as planned in 2025 or 2026. "[C]hanges to federal funding from the NEH caused Wisconsin Humanities to enter hibernation in June 2025, pausing programming for Community

---

[20] NEH, *FY 2024 Appropriations*, https://www.neh.gov/sites/default/files/2024-08/FY%202024%20Appropriations%20Breakdown%20New%20Logo%20small.pdf (last visited July 2, 2025).

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

Powered."[21]  Oregon Humanities' program, Humanity in Perspective, "is currently paused."[22]  At Arizona Humanities, "[g]rants are currently suspended until a determination is made regarding the availability of federal funds,"[23] and at Michigan Humanities, "all programs and grants are currently suspended."[24]  Even "[c]ommunity celebrations being planned to commemorate the nation's 250th anniversary next year are at risk of being significantly scaled back or canceled" because the state humanities councils have far "less money for programming."[25]  Considering that the 1976 Act specifically authorized NEH to support "bicentennial programs" to "assess[] where our society and Government stand in relation to the founding principles of the Republic," 20 U.S.C. § 956(h)(1)(F), Congress hardly can have desired that result.

## III.    ARGUMENT

### A.    The District Court has subject matter jurisdiction over Plaintiffs' claims.

The Amici States agree with and adopt Plaintiffs' argument that this Court has subject matter jurisdiction over Counts 4–6 of the Amended Complaint, which challenge Defendants' actions as unconstitutional, unlawful, and *ultra vires*.  28 U.S.C. § 1331 (conferring "original jurisdiction of all civil actions arising under the Constitution"); *see also Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326–27 (2015) (recognizing federal courts' power to enjoin federal officials from exceeding the bounds of their constitutional and statutory authority).

---

[21] *Who we are*, Community Powered, https://communitypoweredwi.org/about/ (last visited July 2, 2025).

[22] *Humanity in Perspective*, Or. Humanities, https://www.oregonhumanities.org/programs/humanity-in-perspective/ (last visited July 2, 2025).

[23] *Grant Opportunities*, Az. Humanities, https://azhumanities.org/grants/grant-opportunities/ (last visited July 2, 2025).

[24] *Humanities Grants*, Mich. Humanities, https://www.michiganhumanities.org/humanities-grants/ (last visited July 2, 2025).

[25] Clarie Rush & Gary Fields, *Plans to celebrate America's 250th anniversary were underway. Then came the federal funding cuts*, AP News (Apr. 15, 2025 at 9:03 PT), https://apnews.com/article/federal-cuts-humanities-america250-anniversary-doge-572cf095773c66856a1da94030ffd5a9.

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

This brief primarily focuses only on Counts 1–3 of the Amended Complaint, which challenge Defendants' actions under the APA.  Am. Compl. ¶¶ 125–54.

The APA "embodies [a] basic presumption of judicial review to one 'suffering legal wrong because of agency action.'"  *Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41 (1967) (quoting 5 U.S.C. § 702).  The APA waives sovereign immunity for suits challenging agency actions that "seek[] relief other than money damages," unless "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  This broad waiver "is for *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity."  *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57–58 (1st Cir. 2007) (citation modified) (emphasis in original).  The APA also requires that there be "no other adequate remedy in a court" for an action to proceed.  5 U.S.C. § 704.  Here, Plaintiffs' claims fall within § 702's waiver of sovereign immunity because they seek declaratory and injunctive relief against final agency action, not "money damages," and because no other statute "forbids the relief which is sought" here.  5 U.S.C. § 702.  Furthermore, the remedies available in the Court of Federal Claims would be inadequate to redress Plaintiffs' harms.

### 1.    Plaintiffs do not seek money damages.

Plaintiffs' claims fall within APA § 702's waiver of sovereign immunity because they do not seek "money damages," but rather equitable relief under the APA.  In their prayer for relief, Plaintiffs ask this court to vacate or set aside the blanket grant terminations and recissions. Amend. Compl., Prayer for Relief §§ D, E.  Plaintiffs ask further to "[e]njoin Defendants from enforcing or giving effect to their decisions to eliminate the Fed/State Office at NEH, to shut down processing of all open grants to state and jurisdictional humanities councils, and to delay or refuse to spend the funds appropriated to NEH by Congress."  *Id.* ¶ F.  The essence of those claims and Plaintiffs' requested relief is equitable in nature, even though it may involve the incidental payment of money.

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

As the Supreme Court explained in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id*. at 893. The Court expressly distinguished "money damages," which "substitute for a suffered loss," from "specific remedies," which "attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895 (citation modified) (emphasis omitted). The Supreme Court has repeatedly reaffirmed the distinction between "specific relief and compensatory, or substitute, relief," emphasizing that the APA waives sovereign immunity for the former but not the latter. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (citing *Bowen*, 487 U.S. at 895); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (citing *Blue Fox*, and noting that the suit in *Bowen* "was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward," and that "*Bowen* has no bearing on the unavailability of an injunction to enforce a contractual obligation to pay money past due").

Plaintiffs here seek specific equitable relief to give them "the very thing to which [they are] entitled." *Bowen*, 487 U.S. at 895. Because they seek "relief other than money damages," the APA's waiver of sovereign immunity applies. 5 U.S.C. § 702.

## 2.    The Tucker Act does not divest this Court of subject matter jurisdiction.

The Amici States anticipate that Defendants will challenge this Court's ability to hear Plaintiffs' claims by arguing that the Tucker Act, 28 U.S.C. § 1491(a)(1), which gives the Court of Federal Claims exclusive jurisdiction over claims for damages based on, *inter alia*, contracts with the United States, is controlling in this case. But the Tucker Act does not divest this Court of subject matter jurisdiction over Plaintiffs' claims.

The Ninth Circuit recently explained that "[i]f rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 137 F.4th 932, 938 (9th Cir. 2025) (quoting *United*

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

*Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023)).  The operative question is whether the claims are "founded . . . upon" contract, 28 U.S.C. § 1491(a)(1), not whether a contract is "involved" in the case.  *See Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994) ("The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case *involves* contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are *founded* only on a contract, or whether they stem from a statute or the Constitution.") (citation modified) (emphases added); *see also Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1109 (D.C. Cir. 2022) (although plaintiff's claim "f[e]ll within that category of cases . . . in which '[c]ontract issues may arise,'" jurisdiction did not lie under the Tucker Act because "'the action itself [was] not founded on a contract'") (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)); *Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004) (looking to whether the non-contract source of rights speaks to "the issues at stake in this case").

Plaintiffs' claims here are not "'disguised' breach-of-contract claims"; they are founded upon Defendants' alleged violations of the NEH statutes and the Constitution.  *See Cmty. Legal Servs.*, 137 F.4th at 937 (quoting *United Aeronautical Corp.*, 80 F.4th at 1026).  In particular, Plaintiffs contend that the termination and recissions violate 20 U.S.C. § 956(f)(4), which mandates that, for congressionally-appropriated funds for any fiscal year, "each State and each grant recipient which has a plan approved by the Chairperson shall be allotted at least $200,000" and that when congressional appropriations are in excess of funds necessary to make such allotment, the States shall receive additional amounts.  Am. Compl. ¶ 130.  Plaintiffs also contend that the agency actions violate NEH regulations that state that NEH will "process reimbursements to councils with previously approved grants and set forth a statutory process for any grant termination."  *Id.* ¶ 131.  In both respects, Plaintiffs assert that the agency actions are "not in accordance with law" and thereby violate the APA.  5 U.S.C. § 706(2)(A).

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

To decide Plaintiffs' claims, this Court must determine whether the agency's actions were *unlawful*, not whether the terms of the individual grants were breached. Indeed, Federal Defendants do not claim that Plaintiffs failed to comply with the terms of the grants.[26] Thus, "[P]laintiffs' APA claims are based on the Government's statutory and regulatory violations, not any government contract." *See Cmty. Legal Servs.*, 137 F.4th at 937; *Aids Vaccine Advocacy Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121 (D.D.C. 2025) ("[I]t would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached—they instead challenge whether the agency action here was unlawful, irrespective of any breach."), *stay denied*, 145 S.Ct. 753 (2025) (mem.). Because "[t]he grant terms are simply not relevant to this case at all," jurisdiction does not lie under the Tucker Act. *See Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. DLB-25-1363, 2025 WL 1585051, at *23 (D. Md. June 5, 2025) (holding that challenge to mass termination of AmeriCorps programs arose under the APA, not the Tucker Act).

### 3. Plaintiffs have no adequate remedy under the Tucker Act.

Another reason the Court of Federal Claims is not the proper venue for this action is that it cannot afford Plaintiffs an adequate remedy. Under 5 U.S.C. § 704, APA review is limited to situations in which "there is no other adequate remedy in a court." *Id.* "If the suit is at base a claim for money, and the relief available through the Court of Federal Claims under the Tucker Act—a money judgment—will provide an adequate remedy," then the action cannot proceed under the APA. *Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116,

---

[26] Even if the agency had concluded that Plaintiffs failed to comply with the terms of the grants, it would have been required to afford Plaintiffs "reasonable notice and opportunity for hearing" before "notify[ing] [them] . . . that no further grants will be made . . . until there is no longer a default or failure to comply." 20 U.S.C. § 956(f)(7). That did not occur. Moreover, the statute only allows the agency to withhold "*further* grants" for noncompliance, *id.* (emphasis added), not to cancel grants that already have been awarded. *See Kichatov v. Nationstar Mortg.*, No. 3:13-CV-00103-BR, 2013 WL 3025981, at *5 (D. Or. June 14, 2013) ("[W]here a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.") (quoting *Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001)).

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

1125 (Fed. Cir. 2007).  Here, however, the Court of Federal Claims cannot provide Plaintiffs an adequate remedy because Plaintiffs do not merely seek "specific sums already calculated, past due, and designed to compensate for completed labors."  *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 298–99 (2020).  Instead, Plaintiffs seek prospective, declaratory, and injunctive relief.  That is, Plaintiffs seek the reinstatement of grants that NEH has funded annually for decades under its Fed/State program.[27]  As in *Bowen*, a "naked money judgment" for the sums owed under this year's grants is not "an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties."  *See* 487 U.S. at 905.  Because Plaintiffs seek declaratory and "prospective relief"—which the Court of Federal Claims "does not have the general equitable powers of a district court to grant"—the relief available through the Court of Federal Claims is not adequate and jurisdiction properly lies under the APA.  *See id.*

### 4.    The Supreme Court's per curiam stay order in *Department of Education v. California* does not resolve the jurisdictional questions presented in this case.

The Supreme Court's per curiam order in *Department of Education v. California*, 604 U.S. __, 145 S. Ct. 966 (2025), does not dictate a different result.  In that case, the Supreme Court stayed a temporary restraining order that "enjoin[ed] the Government from terminating various education-related grants," reasoning that the government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."  *Id*. at 968.  In doing so, however, the Supreme Court reiterated that, under *Bowen*, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."  *Id*. (quoting *Bowen*, 487 U.S. at 910).  The *California* stay order does not compel the conclusion that this Court lacks jurisdiction over Plaintiffs' claims.

---

[27] As noted *supra*, the statute does not even authorize NEH to cancel existing grants to state humanities councils, but only to withhold "further grants" based on finding noncompliance ("after reasonable notice and opportunity for hearing").

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

First, *California* did not overturn, narrow, or distinguish *Bowen*, which it cited as good law.  To the contrary, *California* was merely an emergency ruling on an application to stay a temporary restraining order pending further briefing and review.  *See* 145 S. Ct. 966; Pet., *California*, No. 24A910 (filed Mar. 26, 2025).  It was "not a decision on the merits," *see Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring), and its discussion of the Tucker Act is limited to one paragraph.  *See California*, 145 S. Ct. at 968.  *California* does not alter existing precedent regarding the relationship between the Tucker Act and the APA.  *Id*.

Second, the facts in *California* are entirely inapposite.  In *California*, where the defendants terminated almost all grants under two statutorily-authorized teacher training programs, defendants insisted that "each grant was reviewed on its own terms, and the Secretary [of Education] and her senior staff engaged in grant-by-grant consideration that resulted in termination of most—but not all—of the current grants under the relevant programs."  Mem. Supp. Defs.' Mot. for Emergency Stay Pending Appeal, No. 1:25-cv-10548-MJJ, ECF 55, at 1 (D. Mass. Mar. 12, 2025).  Here, Defendants did not consider the terms and conditions of *any* individual grants.  Instead, they issued substantively identical blanket termination letters to nearly 1500 grantees; then NEH backtracked and told the states it would "fund[] the humanities councils at 20 percent of its appropriation of program funds," without regard to the needs of any particular grantee.  Am. Compl. ¶¶ 108–11.  Defendants offered no explanation for this abrupt change in position and provided neither notice nor opportunity to be heard.  *Id.* ¶¶ 84, 90, 92.  Thus, unlike in *California*, Defendants have not even arguably implicated the terms and conditions of individual grants, and Plaintiffs plainly challenge an across-the-board termination decision that is reviewable under the APA.

Relatedly, Plaintiffs have not sought to "enforce a contractual obligation to pay money," as singled out in the *California* order.  145 S. Ct. at 968.  *Bowen* made clear that challenging an agency action that implements a broadly-applicable policy does not amount to a request for "money damages," even if "a judicial remedy may require one party to pay money to another."

Page 13 -  BRIEF OF AMICUS CURIAE
CCH/sv3/992828022

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

487 U.S. at 893.  Here, Plaintiffs "challenge[] [NEH]'s actions implementing a categorical policy" to terminate state humanities councils' funding across the board.  *See Rhode Island v. Trump*, No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868, at *6 (D.R.I. May 6, 2025).  "[N]owhere are the parties quibbling over whether the [humanities councils] subject to those grant terminations breached the terms or conditions of the underlying agreements as to transform this action into one sounding in contract."  *Id.*  Plaintiffs thus have not brought "a claim [that] is 'at its essence' contractual."  *See id.* (quoting *Crowley Gov't Servs.*, 38 F.4th at 1106).

Accordingly, the per curiam stay order in *California* does not indicate that this court lacks subject matter jurisdiction over Plaintiffs' claims.  Indeed, many district courts recently have determined that they have subject matter jurisdiction over similar APA claims.  *See, e.g.*, *Corp. for Nat'l & Cmty. Serv.*, 2025 WL 1585051, at *22–28 (Tucker Act did not apply to claim that AmeriCorps violated APA by terminating grants for programs established under the national service laws); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, No. 25-cv-02847-AMO, 2025 WL 1233674, at *6–7 (N.D. Cal. Apr. 29, 2025) (Tucker Act did not apply to challenge to agency cancellation of funding for counsel representing unaccompanied children), *stay denied*, 137 F.4th 932 (9th Cir. 2025); *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25-1079 (PLF), 2025 WL 1453047, at *5–11 (D.D.C. May 21, 2025) (district court had jurisdiction over APA claim arising out of federal grant termination based on agency's efforts to eliminate diversity, equity, and inclusion policies and practices); *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698 (TSC), 2025 WL 1131412, at *9–12 (D.D.C. Apr. 16, 2025) (Tucker Act did not apply to claims that EPA violated the APA by terminating grants); *Pacito v. Trump*, No. 2:25-cv-255-JNW, 2025 WL 1077401 (W.D. Wash. Apr. 9, 2025) (Tucker Act did not apply to claims challenging termination of funding for United States Refugee Assistance Program because plaintiffs "assert[ed] rights derived from statutory mandates, not contractual promises, and [sought] equitable enforcement of statutory obligations, no contractual remedies"); *Sustainability Inst. v. Trump*, No. 2:25-cv-2152-RMG, 2025 WL 1486978, at *1–6 (D.S.C. Apr.

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

29, 2025) (district court had jurisdiction over APA claims brought after federal government froze funding and the terms and conditions of individual grants were not at issue). And the Ninth Circuit already denied the Administration's request to stay one of those decisions, holding that "the Government ha[d] not shown a likelihood of success on its Tucker Act argument." *Cmty. Legal Servs.*, 137 F.4th at 939. Here too, this Court should hold that the Tucker Act is not implicated and that this Court has jurisdiction over the APA claims.

**B.    A preliminary injunction is warranted.**

A preliminary injunction is warranted where the moving party establishes that: (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1). All of those factors strongly weigh in favor of Plaintiffs. Accordingly, this Court should enter a preliminary injunction to restore the status quo while the merits of the case can be reviewed.

**1.    Plaintiffs have established a likelihood of success on the merits.**

Plaintiffs are likely to succeed on the merits of all their claims. First, the termination of NEH grants, followed by the partial recission at a greatly reduced rate, is arbitrary and capricious, and therefore violates the APA. 5 U.S.C. § 706(2)(A). It is "a fundamental requirement of administrative law . . . that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Amerijet Int'l v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). "[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." *Id.* (emphasis in original); *see also Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (an agency must "articulate[] 'a satisfactory explanation' for [its] decision" (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)). Here, Defendants failed to identify a reasoned basis for their wholesale termination of all open NEH grants, nor did they explain the reason for

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

rescinding some of those terminations and instituting an across-the-board reduction in funds for some but not all open grants.

Furthermore, Defendants' actions fail to account for the serious reliance interests that Plaintiffs have in NEH grant awards. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020) ("[B]ecause DHS was not writing on a blank slate, it was required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns.") (citation modified). "When an agency changes course, . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Id.* at 30 (citation modified). The NEH's Fed/State program has existed for more than 50 years, and Plaintiffs rely on NEH support to fund humanities programs throughout the nation.[28] The failure to consider—much less rationally address—these reliance interests is arbitrary and capricious.

Second, Defendants are violating the APA by not abiding by congressional appropriations. Since 1972, the NEH has funded state humanities councils through congressional appropriations, which are delineated in each fiscal year appropriation bill. Am. Compl. ¶¶ 7, 17. For example, in Fiscal Years 2024 and 2025, $207 million was appropriated to the NEH, $65 million of which was directed to go to the Fed/State partnership. NEH funding for state humanities councils is mandatory: The statute provides that "each State and each grant recipient which has a plan approved by the Chairperson *shall* be allotted at least $200,000." 20 U.S.C. § 956(f)(4) (emphasis added). If Congress appropriates funds in excess of the amount

---

[28] Underscoring the importance that Congress placed on the state humanities councils' reliance interests, the statute does not even allow NEH to cancel current grants for noncompliance, but only to withhold "further grants" until any issues are rectified. 20 U.S.C. § 956(f)(7). The only way that NEH can stop funding a state humanities council permanently is if "a State desires to designate or to provide for the establishment of a State [humanities] agency," and even then, "such State shall designate the humanities council in existence on the date the State agency is established as the State agency." *Id.* § 956(f)(2)(A); *see also* 126 Cong. Rec. S1282 (Feb. 7, 1980) (Statement of Sen. Javits) ("[T]he State may establish an official State humanities council based upon a requisite level of State appropriation for the humanities and the designation of the existing humanities organization as the State council.").

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

required to make the $200,000 allotments, then "44 per centum of the amount of such excess for

such fiscal year *shall* be allotted in equal amounts among the States and grant recipients which

have plans approved by the [NEH] Chairperson."  *Id.* § 956(f)(4)(B) (emphasis added).  And "22

per centum of the amount of such excess for such fiscal year *shall* be allotted among the States

and grant recipients which have plans approved by the Chairperson in amounts which bear the

same ratio to such excess as the population of the State for which the plan is approved."  *Id.* §

956(f)(4)(C) (emphasis added).  NEH has contravened these statutory provisions by first

eliminating the grants entirely and then reinstating them at only 20% of Congress's total

appropriation.  *Id.* § 956(f)(4)(B), (C).

Third, Defendants' actions violate the Take Care Clause, which requires the President to

"take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, "across the entire

Executive Branch—including 'independent' agencies."  *English v. Trump*, 279 F. Supp. 3d 307,

327 (D.D.C. 2018) (citing *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496–97 (2010)).

"Withholding congressionally appropriated funds, and effectively shuttering a congressionally

created agency simply cannot be construed as following through on the constitutional mandate of

the Take Care Clause."  *Rhode Island v. Trump*, 2025 WL 1303868, at *15 (citation modified).

Fourth, Defendants' actions violate the Separation of Powers Clause, which grants the

legislative branch the exclusive power to make law, as well as the power of the purse.  U.S.

Const. art. I, §§ 1, 8.  By contrast, "[t]here is no provision in the Constitution that authorizes the

[executive branch] to enact, to amend, or to repeal statutes."  *Clinton v. City of New York*, 524

U.S. 417, 438 (1998).  By essentially gutting the NEH, Defendants have usurped Congress's

authority to create and abolish federal agencies.  Federal Defendants have also usurped

Congress's power of the purse by disregarding its appropriations to the NEH and the Federal-

State partnership.  *Cf. In re Inst. of Museum & Library Servs.*, No. B-337375 (Comp. Gen. June

16, 2025), https://www.gao.gov/assets/880/878908.pdf (concluding that agency violated

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

Impoundment Control Act "by improperly withholding appropriated funds from obligation and expenditure").

Plaintiffs' likelihood of success on the merits supports granting the motion for preliminary injunction. *See, e.g.*, *Rhode Island v. Trump*, 2025 WL 1303868 (finding that states were likely to succeed on merits of APA claims after federal government mandated elimination or reduction of non-statutory functions and personnel at Institute of Museum and Library Services, Minority Business Development Agency, and Federal Mediation and Conciliation Service); *Cmty. Legal Servs.*, 2025 WL 1233674 (finding that plaintiffs were likely to succeed on merits of APA claims after federal government cut plaintiffs' funding and ordered them to stop all work on contract through which the government provided funding).

### 2. Defendants' abrupt policy changes and communications irreparably harm Plaintiffs.

Defendants' illegal and arbitrary actions have caused, and will continue to cause, irreparable harm to Plaintiffs. The humanities are of paramount importance to a well-educated democratic society and the NEH is "the only federal agency in the United States dedicated to funding the humanities." *About the National Endowment for the Humanities*, NEH, https://www.neh.gov/about (last visited July 2, 2025). NEH grants cover a large portion of the costs for activities that state humanities councils are required to provide under the statute. 20 U.S.C. § 956(f)(1) (allowing for up to 50% of the cost of state humanities councils' activities to be funded by NEH). The grants "support the building blocks of American civil society, helping to examine the human condition, promote civics education, understand our cultural heritage, foster mutual respect for diverse beliefs and cultures, and develop media and information literacy." *About the National Endowment for the Humanities*, *supra*.

As a result of Defendants' actions, the state humanities councils have been forced to terminate or furlough staff, cancel programming and events, and pull support for local libraries, schools, and families. Rockoff Decl. ¶ 2, 15 (Dkt. No. 18). Grant awards that were previously

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

approved have been either terminated or greatly reduced, leaving a deficit in the councils'

budgets. *Id.*; Asmo Decl. ¶ 12-14 (Dkt. No. 9). This causes irreparable harm to Plaintiffs.

### 3. The public interest strongly favors granting a preliminary injunction.

The third and fourth *Winter* factors—"harm to the opposing party" and the "public

interest"—"merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418,

435 (2009). These factors favor the Plaintiffs in this case.

"[T]here is a substantial public interest 'in having governmental agencies abide by the

federal laws that govern their existence and operations.'" *League of Women Voters v. Newby*,

838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir.

1994)). Indeed, courts have routinely observed that "there is generally no public interest in the

perpetuation of unlawful agency action." *Planned Parenthood of N.Y.C. v. U.S. Dep't of Health*

*& Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018). Moreover, these cuts already are

impeding state humanities councils' efforts to "furnish adequate programs in the humanities in

each of the several States" 20 U.S.C. § 956(f)(1) thereby harming the residents of the Amici

States that are deprived of important humanities programs. *Winter*, 555 U.S. at 24 ("In

exercising their sound discretion, courts of equity should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction." (internal quotations

omitted.)); *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (public interest includes "the

consequences of granting or denying the injunction to non-parties"); *Bernhardt v. Los Angeles*

*County*, 339 F.3d 920, 931 (9th Cir. 2003) (same).

Conversely, the federal government "cannot suffer harm from an injunction that merely

ends an unlawful practice or reads a statute as required to avoid constitutional concerns."

*Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Here, as Plaintiffs have shown,

Defendants' actions transgress the law in multiple ways. There is a strong public interest in

preventing Defendants' unlawful conduct and requiring NEH to comply with basic statutory and

procedural requirements as determined by Congress.

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791

### III.   CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted.

DATED July 7, 2025.

Respectfully submitted,

**DAN RAYFIELD**
Attorney General

*/s/ Coby Howell*
COBY HOWELL #T25051904
Assistant Attorney General
BRIAN SIMMONDS MARSHALL #196129
JOANNA HERSHEY #152665
Senior Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
coby.howell@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Joanna.Hershey@doj.oregon.gov

Of Attorneys for State of Oregon

**Nicholas W. Brown**
Attorney General State of Washington

By: */s/ Zane Muller*
Zane Muller, WSBA #63777
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Zane.Muller@atg.wa.gov

**Kristen K. Mayes**
Attorney General State of Arizona
2005 N. Central Ave.
Phoenix, AZ 85004
1300 Broadway, 10th Floor
Denver, CO 80203

**WILLIAM TONG**
Attorney General State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

**ANTHONY G. BROWN**
Attorney General of Maryland

*/s/ Keith M. Jamieson*
Keith M. Jamieson
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.state.md.us

**PHILIP J. WEISER**
Attorney General, State of Colorado
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

Page 20 -  BRIEF OF AMICUS CURIAE
CCH/sv3/992828022

**ANNE E. LOPEZ**
Attorney General of the State of Hawai'i
425 Queen St.
Honolulu, HI 96813

**DANA NESSEL**
Michigan Attorney General
P.O. Box 30212
Lansing, Michigan 48909

**RAÚL TORREZ**
Attorney General of New Mexico
201 Third St. NW, Suite 300
Albuquerque, NM 87102

**CHARITY R. CLARK**
Vermont Attorney General
109 State Street
Montpelier, VT 05609

**BRIAN L. SCHWALB**
Attorney General District of Columbia
400 6th Street, NW
Washington, D.C. 20001

**AARON M. FREY**
Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006

**AARON D. FORD**
Attorney General of Nevada
100 North Carson Street
Carson City, NV 89701

**PETER F. NERONHA**
Attorney General State of Rhode Island
150 South Main Street
Providence, RI 02903

**JOSHUA L. KAUL**
Attorney General State of Wisconsin
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857

Department of Justice
100 SW Market St.
Portland, OR 97201
(971) 673-1880/ Fax: (503) 947-4791