**WILLIAM M. NARUS, CAB #243633**
Acting United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
sean.martin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 727-1000
        Attorneys for Defendants


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DISTRICT


| | |
|---|---|
| **OREGON COUNCIL FOR THE HUMANITIES; FEDERATION OF STATE HUMANITIES COUNCILS**, | Case No. 3:25-cv-00829-SI |
| | |
| Plaintiffs, | RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| **U.S. DEPARTMENT OF GOVERNMENT EFFICIENCY; AMY GLEASON; NATIONAL ENDOWMENT FOR THE HUMANITIES; MICHAEL MCDONALD; NATIONAL COUNCIL ON THE HUMANITIES**, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 2

LEGAL STANDARD .............................................................................. 5

ARGUMENT .......................................................................................... 7

   I.    Plaintiffs have no likelihood of success on the merits of their
       claims ............................................................................................ 7

      A.   Plaintiffs have no likelihood of success on their separation
          of powers claim ...................................................................... 7

      B.   Plaintiffs have no likelihood of success on their Impoundment
          Control Act claim ................................................................ 12

      C.   Plaintiffs have no likelihood of success on their APA claims ...... 15

          1.  This Court lacks subject-matter jurisdiction over Plaintiffs'
              claims concerning grant terminations ......................................... 15

          2.  Plaintiffs otherwise have no likelihood of success on the
              merits of their APA claims ........................................................... 21

              a.  APA review is unavailable because statutes preclude judicial
                  review, and alternative remedies exist for such review ......... 22

              b.  Plaintiffs' APA claims fail because they do not seek judicial
                  review of a discrete agency action ........................................... 22

               c.  APA review is unavailable because the challenged actions
                  are committed to agency discretion by law ............................. 26

              d.  Plaintiffs' "contrary to law" APA claim is premised on
                  notice/appeal provisions that are inapplicable in their case .. 28

e. Plaintiffs' arguments for their "arbitrary and capricious" APA claim are unpersuasive ................................... 30

D. This Court lacks subject-matter jurisdiction over employee termination and personnel-related claims ................................. 31

II. Plaintiffs fail to demonstrate a likelihood of irreparable harm that favors a preliminary injunction ................................. 33

III. Neither the balance of equities nor the public interest favors a preliminary injunction ................................. 37

IV. Any injunction should be narrowly tailored to the harms to the named plaintiffs ................................. 40

A. Historical equity practice limits the scope of any injunction ...... 40

B. The principle laid out in *CASA* applies to any equitable relief Plaintiffs seek under the APA ................................. 42

V. Any injunctive relief should be stayed pending appeal and be conditioned on a bond ................................. 48

CONCLUSION ................................. 49

CERTIFICATE OF COMPLIANCE ................................. 50

# TABLE OF AUTHORITIES

## FEDERAL CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................. 7

*Am. Ass'n of Colls. for Tcher. Educ. v. McMahon*,
No. 25-1281 (4th Cir. 2025) ................................................................ 19

*Anderson v. United States*, 612 F.2d 1112 (9th Cir. 1979) ............................... 1

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984)........................................ 13

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)................................................ 20

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021)...................................... 36

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)........................................................................... 45

*Dalton v. Specter*, 511 U.S. 462 (1994) ........................................................ 12

*Department of Education v. California*,
145 S. Ct. 966 (2025)................................................ 15, 16, 20, 35, 37, 39, 49

*Doe v. Los Angeles Unified School Dist.*,
No. 2:16-cv-00305-CAS (JEMx), 2017 WL 797152....................................... 33

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975)................................................ 41

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).................... 37

*East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962 (9th Cir. 2021)....... 45

*Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012) ...................................... 31-32

*FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898 (2025)....................... 30

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13
(D.C. Cir. 2006) ................................................................................ 23

*Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710 (S.D. Tex. 2024) ..................... 13

*Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495
(D.C. Cir. 2009) ............................................... 32

*Harris Cnty., Texas v. Kennedy*, -- F. Supp. 3d. --, No. 25-cv-1275 (CRC),
2025 WL 1707665 (D.D.C. June 17, 2025) ............ 8, 10, 11, 17, 20, 39-40, 40

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) .............................................. 46, 46-47

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......................................... 26

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239
(9th Cir. 2013) .............................................. 35-36

*Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420 (D.C. Cir. 2004) .............. 23

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197
(9th Cir. 1980) ............................................... 34

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................... 10

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ................................. 7

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ....................... 23, 24, 25, 32

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F. 3d 873 (9th Cir. 2009) ..................................... 7, 34

*Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999) ............................... 18

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) ................................. 16

*North Star Alaska v. United States*, 14 F.3d 36 (9th Cir.1994) ..................... 16

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) .................. 23, 25, 32-33

*Nyunt v. Chairman, Broad. Bd. Of Governors*, 589 F.3d 445
(D.C. Cir. 2009) .............................................. 32

*Pippenger v. U.S. DOGE Serv.*, No. 25-CV-1090 (BAH),
  2025 WL 1148345 (D.D.C. Apr. 17, 2025) .................................................... 19

*Rocky Ford Hous. Auth. v. U.S. Dep't of Agric.*, 427 F. Supp. 118
  (D.D.C. 1977) ............................................................................................. 13

*Rogers v. United States*, 14 Cl. Ct. 39 (1987) .................................................. 13

*Rogers v. United States*, 861 F.2d 729 (Fed. Cir. 1993) .................................. 13

*Sampson v. Murray*, 415 U.S. 61 (1974) .......................................................... 34

*Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Shalala*,
  988 F. Supp. 1306 (D. Or. 1997) ................................................................... 8

*Sols. in Hometown Connections v. Noem*, No. 25-cv-885, 2025 WL 1103253
  (D. Md. Apr. 14, 2025) ........................................................................ 19, 20

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ................................. 7

*Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003) .......................................... 26

*Trump v. CASA,, Inc.*, 606 U.S. ___ (2025) .............. 40-41, 41, 42, 43, 46, 47,48

*Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641
  (9th Cir.1998) .............................................................................................. 16

*United States v. Texas*, 599 U.S. 670 (2023) ................................... 43, 44, 45, 47

*Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643 (APM),
  2025 WL 1865160 (D.D.C. July 7, 2025) ............................. 8, 9, 11, 17, 18-19

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
  714 F.3d 186 (4th Cir. 2013) ....................................................................... 23

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954
  (9th Cir. 2010) ............................................................................................. 33

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def., Fund*,
  435 U.S. 519 (1978) .................................................................................... 27

*Webster v. Doe*, 486 U.S. 592 (1988)................................................. 26

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)........................................ 46

*Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas*, 5 F.4th 997
    (9th Cir. 2021) ........................................................................... 23-24

*Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817
    (D.C. Cir. May 3, 2025)................................... 12, 16, 18, 20, 25, 32, 36-37, 38

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................. 6, 34, 37-38

## FEDERAL STATUTES

2 U.S.C. § 683................................................................................ 14

2 U.S.C. § 687................................................................................ 12, 12-13

5 U.S.C. § 701(a)(1) ..................................................................... 22

5 U.S.C. § 701(a)(2) ..................................................................... 26

5 U.S.C. § 703................................................................................ 44

5 U.S.C. § 704................................................................................ 22, 23

5 U.S.C. § 706(2) .......................................................................... 42, 43

5 U.S.C. § 1204.............................................................................. 31

5 U.S.C. § 1214.............................................................................. 31

5 U.S.C. § 7104.............................................................................. 31

5 U.S.C. § 7121-22........................................................................ 31

5 U.S.C. § 7701.............................................................................. 31

20 U.S.C. § 951.............................................................................. 2

20 U.S.C. § 951(2) ............................................................... 2, 36

20 U.S.C. § 956(b) .................................................................. 3

20 U.S.C. § 956(c) .............................................. 3, 9, 11, 17, 27

20 U.S.C. § 956(f) ............................................... 5, 10, 11

20 U.S.C. § 956(f)(4) .......................................... 9, 10, 29

20 U.S.C. § 956(f)(6) .......................... 9, 10, 14, 17, 27, 29

20 U.S.C. § 956(f)(7) ................................................... 28

20 U.S.C. § 960(a)(1)(B) ................................. 5, 10, 17, 29

20 U.S.C. § 960(b)(1) ........................................ 8, 15, 17, 27

20 U.S.C. § 1491(a)(2) ............................................... 35

28 U.S.C. § 1491(a)(1) ............................................... 15

41 U.S.C. §§ 7103–05 ............................................... 31

## CONGRESSIONAL ENACTMENTS

2025 Appropriations Act, Pub. L. 118-42, 138 Stat. 25, 281
(Mar. 9, 2024) ................................................................ 8, 10

## FEDERAL RULES

Fed. R. Civ. P. 65(c) ................................................... 48

## FEDERAL REGULATIONS

2 C.F.R. § 200.340(a)(4) ........................................ 28, 30

2 C.F.R. § 200.341(a) ................................................. 29

2 C.F.R. § 200.342 ................................................... 29

## EXECUTIVE ORDERS

Executive Order No. 14222, 90 Fed. Reg. 11095 (2025) ...................... 38, 43, 44

## INTRODUCTION

This Court should deny Plaintiffs' motion for preliminary injunction. The requested injunction would go well beyond preserving the status quo; Plaintiffs seek a disfavored mandatory injunction not to be granted "unless extreme or very serious damage will result" and not to be issued in a "doubtful" case "or where the injury complained of is capable of compensation in damages." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (cleaned up). Plaintiffs fail to establish that the circumstances here warrant their requested injunction.

As Defendants explain below, Plaintiffs have no likelihood of success on the merits of their claims. They cannot establish any violations of the separation of powers or the Impoundment Control Act. Further, these claims and their Administrative Procedure Act claims have no likelihood of success in this Court because Plaintiffs' claims are founded on their contracts with the National Endowment for the Humanities ("NEH") and they seek the essentially contractual remedy of specific performance on their contracts. Plaintiffs' claims must be heard exclusively in the Court of Federal Claims.

Plaintiffs also fail to establish a likelihood of irreparable harm that warrants their requested injunction. Their alleged harms are predominantly economic and can be remedied in the Court of the Federal Claims.

Next, Plaintiffs fail to establish that the balance of equities and public interests tip in their favor. As Defendants explain below, there are important equities and public interests that favor the government here.

In any event, if this Court is considering granting any injunctive relief, such relief must be narrowly tailored to address the harms directly suffered by the named plaintiffs. Plaintiffs seek to restore grants to a host of state and jurisdictional councils that are not parties in this action. Such an injunction goes too far. Plaintiff Federation of State Humanities Councils is not in privity with the government and lacks any rights under the grants that NEH entered into with state humanities councils. The Federation is neither a party to those grant agreements nor an intended third-party beneficiary. The Federation lacks a legally protected interest in the grant agreements that NEH entered into with individual councils, who are nonparties to this case except the Oregon Council for the Humanities.

## BACKGROUND

NEH was created by statute in 1965. *See* National Foundation on the Arts and the Humanities Act (the "Act"), Pub. L. 89-209, 20 U.S.C. § 951 *et seq*. The Act notes that the "encouragement and support of national progress and scholarship in the humanities and the arts, while primarily a matter for private and local initiative, are also appropriate matters of concern to the Federal Government." *Id*. § 951(2).

**Page 2**    **Response to Plaintiffs' Motion for Preliminary Injunction**

The Act provides that that NEH "shall be headed by a chairperson, who shall be appointed by the President, by and with the advice and consent of the Senate." 20 U.S.C. § 956(b). "The Chairperson, with the advice of the National Council on the Humanities . . . , is authorized to enter into arrangements, including contracts, grants, loans, and other forms of assistance, to" carry out various specified purposes, including to "initiate and support research and programs to strengthen the research and teaching potential of the United States in the humanities by making arrangements with individuals or groups to support such activities . . ." and to "initiate and support programs and research which have substantial scholarly and cultural significance and that reach, or reflect the diversity and richness of our American cultural heritage, including the culture of, a minority, inner city, rural, or tribal community." *Id*. § 956(c).

In early April 2025, considering the new Administration's priorities and Executive Orders, NEH terminated 79 general operating support grants to state and jurisdictional humanities councils.  Declaration of Michael McDonald ("McDonald Decl.") ¶ 8.

Regarding the two Plaintiffs here, NEH terminated only a general operating support grant to Plaintiff Oregon Council for the Humanities and two Chair's-discretion grants totaling $60,000 to Plaintiff Federation of State Humanities Councils.  *Id*. ¶¶ 9-10; *Id*. Exhibit ("Exh.") B.  Plaintiff Oregon

Council for the Humanities is a non-profit corporation created to distribute

NEH funds to humanities projects in Oregon.  The other Plaintiff, the

Federation of State Humanities Councils ("Plaintiff Federation"), is a

national nonprofit membership organization that undertakes activities

including advocating for increased investment in humanities projects.[1]  Am.

Compl. ¶¶ 34-35.

On April 24, 2025, NEH issued a statement of its priorities and

frequently asked questions regarding its grants.  McDonald Decl. Exhibit C

(also available at https://www.neh.gov/news/update-neh-funding-priorities-

and-agencys-recent-implementation-trump-administration-executive) (last

visited July 15, 2025).; *see also* McDonald Decl. ¶¶ 4, 16, 21, 23 (discussing

NEH's mission and ongoing humanities work).

NEH announced in early May 2025 its award of millions of dollars in

grants to support research, scholarship, or other projects in subjects

including the Holocaust, the history of the Deaf, William Blake, ancient

Rome, German Expressionist art, and African American photojournalism.

McDonald Decl. Exh. D (also available at https://www.neh.gov/news/neh-

announces-955-million-68-humanities-projects) (last visited July 15, 2025).

---

[1] Plaintiff Federation represents almost all the 56 state and jurisdictional
humanities councils.  *See* ECF 20, Declaration of Phoebe Stein ¶ 4.  Plaintiffs
do not identify the one council that they say is not a member of the
Federation.

On May 15, 2025, Plaintiffs filed this action. ECF 1. They challenge various grant termination notices issued to the humanities councils by NEH in early April 2025. *See* ECF 8, Pls.' Mem. 1.

In early June 2025, NEH rescinded most of its April 2025 general operating support grant terminations to the state and jurisdictional humanities councils. NEH rescinded the grant terminations for Oregon and all the other state humanities councils that later filed declarations in support of Plaintiffs' motion for preliminary injunction. *See* McDonald Decl. ¶¶ 17-18. NEH stated that it would fund the councils in line with legislation regarding how it must use its appropriation. *Id*. ¶ 18 & Exh E. By law, for any fiscal year, NEH must designate not less than 20% of its overall appropriation for carrying out its granting authorities under 20 U.S.C. § 956(f). 20 U.S.C. § 960(a)(1)(B).

On June 11, 2025, after NEH rescinded the grant terminations, Plaintiffs filed an amended complaint—the operative complaint. ECF 6. Plaintiffs characterize their case as one challenging the "wholesale dismantling" of NEH. Am. Compl. ¶ 119.

In seeking a preliminary injunction, Plaintiffs allege that NEH's grant actions regarding the councils and other circumstances show an unlawful "dismantling" of NEH. Pls.' Mem. 1. According to Plaintiffs, Defendants violated the law in "refus[ing] to spend funds appropriated by Congress" and

violated the Impoundment Control Act of 1974. *Id.* Plaintiffs also argue that

Defendants violated the Administrative Procedure Act ("APA") by not

applying a specific formula, not providing notice and opportunity to be heard

prior to modifying grant funding, and not providing a means for appeal. *Id.*

at 2.[2] Plaintiffs seek an injunction to "restore" NEH grants to state and

jurisdictional councils to what they were prior to the April 2025 and June

2025 termination and rescission decisions. *Id.* at 30.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff

seeking a preliminary injunction must prove (1) that it is likely to succeed on

the merits; (2) it is likely to suffer irreparable harm in the absence of

preliminary relief; (3) the balance of equities tips in its favor; and (4) an

injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative test which allows

for a preliminary injunction where a plaintiff shows "serious questions going

to the merits" and the balance of equities tips sharply in a plaintiff's favor,

---

[2] Plaintiffs' operative complaint alleges other counts/theories that are not
asserted or relied upon in their preliminary injunction motion, and
Defendants' response therefore does not address these counts/theories.

assuming the plaintiff proves the other two *Winter* elements.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  In any event, a plaintiff requesting a preliminary injunction must carry its burden to establish a "clear showing" of the four *Winter* elements. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

There are two types of preliminary injunctions: (1) a prohibitory injunction that "preserve[s] the status quo pending a determination of the action on the merits," and (2) a mandatory injunction that "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873, 878-79 (9th Cir. 2009) (citation modified) (alteration in original). A mandatory injunction " 'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.' " *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (cleaned up).

## ARGUMENT

### I.  Plaintiffs have no likelihood of success on the merits of their claims.

#### A.  Plaintiffs have no likelihood of success on their separation of powers claim.

Plaintiffs are unlikely to succeed on their claim that Defendants violated the separation of powers.  According to Plaintiffs, Defendants "have refused to disburse funds in the manner required by Congress."  Pls.' Mem.

17.  Plaintiffs are incorrect.  *See Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643 (APM), 2025 WL 1865160, *17 (D.D.C. July 7, 2025) (finding no likelihood of success on the merits of a separation-of-powers claim regarding terminated federal grants); *Harris Cnty., Texas, v. Kennedy*, -- F. Supp. 3d. --, No. 25-cv-1275 (CRC), 2025 WL 1707665, *9-*10 (D.D.C. June 17, 2025) (same).

To show a likelihood of success on the merits of their separation-of-powers claim, Plaintiffs must—but cannot—demonstrate that Congress specified when and how NEH's appropriation must be spent.

NEH is not required by Congress to spend all its appropriated funds each year. *See*, *e.g*., Am. Compl. ¶ 65 (alleging that NEH "must spend" $207 million in 2025). Instead, Congress established for NEH that sums appropriated "for any fiscal year shall remain available for obligation and expenditure until expended." 20 U.S.C. § 960(b)(1).  Accordingly, the 2024 legislation appropriating funds to NEH makes clear that the agency's $207 million in appropriations will "remain available until expended."  2024 Appropriations Act, Pub. L. 118-42, 138 Stat. 25, 281 (Mar. 9, 2024).

As this Court recognized for similarly worded "remain available until expended" appropriations language, such "no year" language establishes there is "no fiscal year limitation or expiration date*." Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Shalala*, 988 F. Supp. 1306, 1330 (D. Or. 1997).

NEH's appropriation remains available to the agency even if that expenditure does not occur within the year.  The appropriations legislation does not limit NEH's discretion by compelling it to spend all the funds appropriated to it by a date certain.

Even if NEH does not spend all its appropriated funding within a given year—which is speculative—that is not inconsistent with Congress's appropriation and does not violate the separation of powers.  Where, as here, grants are sourced to "no-year" appropriations, NEH is not required to expend the funds by the end of a fiscal year and there is no viable separation of powers claim.  *See Vera Inst.*, 2025 WL 1865160 at *17.

Further, NEH has discretion not to spend amounts it allotted or made available under the grant formulas laid out in 20 U.S.C. § 956(f)(4). Pursuant to 20 U.S.C. § 956(f)(6), any such amounts allocated or made available, but not granted to an entity, "shall be available to [NEH] for the purpose of carrying out the agency's mission under 20 U.S.C. § 956(c).

Therefore, in addition to temporal flexibility, NEH also has flexibility in whether it spends funds allotted to particular grantees and is not locked into funding such grantees.  Instead, Congress provided simply that of the sums appropriated to NEH for any fiscal year, not less than 20% "shall be for

carrying out" 20 U.S.C. § 956(f).  20 U.S.C. § 960(a)(1)(B).[3]  As the Supreme

Court has recognized, "[t]he allocation of funds from a lump-sum

appropriation is another administrative decision traditionally regarded as

committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993).

"After all, the very point of a lump-sum appropriation is to give an agency the

capacity to adapt to changing circumstances and meet its statutory

responsibilities in what it sees as the most effective or desirable way." *Id*.

When, as here, Congress does not "specify restrictions" on how a lump-

sum appropriation must be used, it is presumed that Congress meant to leave

it to the recipient agency to distribute the funds among some or all the

permissible objects as it sees fit.  *Harris Cnty.*, 2025 WL 1707665 at *9 (citing

*Lincoln*, 508 U.S. at 192.  Although 20 U.S.C. § 956(f)(4) sets an allotment

formula regarding distribution of grants, NEH by statute retains the plain

discretion not to grant such amounts as allotted and to spend the amounts on

other NEH program priorities.  20 U.S.C. § 956(f)(6).

---

[3] Although Plaintiffs assert that Congress "designated" $65,000,000 annually
for the councils, Pls.' Mem. 16, that supposed direction is nowhere in the
appropriation legislation passed by Congress.  Instead, the $207 million in
appropriated funds approved by Congress for 2024 includes the generalized
direction that $192 million is for support of activities in the humanities and
administering the functions of the Act.  2024 Appropriations Act, Pub. L. 118-
42, 138 Stat. 25, 281 (Mar. 9, 2024).

Here, NEH intends to re-obligate grant funds to other permissible agency grants and expenditures and that does not violate the separation of powers. *See Vera Inst.*, 2025 WL 1865160 at *17. NEH's congressional appropriation is open-ended and the agency can re-obligate money freed up by modifications in particular grants. *See Harris Cnty.,* 2025 WL 1707665 at *9.

Plaintiffs have not identified any statute that would prohibit NEH from modifying grant agreements, reducing staff, or eliminating divisions or programs. The governing statute establishing NEH authorizes the agency head to disperse grants in accordance with broadly stated objectives. *See* 20 U.S.C. § 956(c). It does not entitle the Plaintiffs to guaranteed grant proceeds at prior levels. *Id.* Plaintiffs do not identify anything in any relevant statute that requires the agency to maintain particular levels of staff, dispense particular quantities of grant funds over a specified time frame, or maintain grant awards at prior levels.

Had Congress meant to forbid NEH from modifying the grants at issue, as in *Harris County*, "it could have easily said as much. But it did not." 2025 WL 1707665 at *9. As with the agency in *Harris County*, NEH here "has not refused to spend these funds; it has declined to spend them in a certain way." *Id.*

**Page 11     Response to Plaintiffs' Motion for Preliminary Injunction**

Finally, to the extent Plaintiffs cast their separation-of-powers claim as constitutional to avoid jurisdictional and threshold obstacles (*see infra* Argument I.C.), the claim is still barred because its essence is statutory. The Supreme Court has made clear that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review" for constitutionality. *Dalton v. Specter*, 511 U.S. 462, 472-74 (1994). Plaintiffs' separation-of-powers claim hinges on whether Defendants acted in accordance with their statutory obligations. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, *5 (D.C. Cir. May 3, 2025) (finding no likelihood of success on separation-of-powers and Impoundment Control Act claims).

Because Plaintiffs have no likelihood of success on their separation of powers claim, this Court should deny their request for a preliminary injunction.

### B.   Plaintiffs have no likelihood of success on their Impoundment Control Act claim.

Plaintiffs have no likelihood of success on their Impoundment Control Act ("ICA") claim. The ICA is enforced by the Comptroller General via civil suit. 2 U.S.C. § 687. Further, such a suit may only be brought in the United States District Court for the District of Columbia. *See id.* In addition, an ICA suit is not to be brought "until the expiration of 25 calendar days of

continuous session of the Congress following the date on which an explanatory statement by the Comptroller General of the circumstances giving rise to the action contemplated has been filed with the Speaker of the House of Representatives and the President of the Senate." *Id.*

Enforcement of the ICA by the Comptroller General is exclusive; the Supreme Court has explained that "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984).

Against this backdrop, it is well established that Plaintiffs have no private right of action to bring an ICA claim—and therefore no likelihood of success on their ICA claim. "Congress did not intend the [ICA] to create a claim upon which relief can be granted to individuals in cases where the executive has failed to report to Congress the withholding of funds or contract authority." *Rocky Ford Hous. Auth. v. U.S. Dep't of Agric.*, 427 F. Supp. 118, 134 (D.D.C. 1977); *Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 733-35 (S.D. Tex. 2024) (same); *Rogers v. United States,* 14 Cl. Ct. 39, 50 (1987) ("Congress did not intend to create a private cause of action in cases of unauthorized impoundments."), *aff'd*, 861 F.2d 729 (Fed. Cir. 1993).

In any event, the separation of powers principles codified in the ICA are not implicated here.  In a nutshell, under the ICA, whenever the President determines that congressionally appropriated funds should be withheld from certain programs for one reason or another, the ICA mandates that the President communicate the message to Congress in a particular way. *See* 2 U.S.C. § 683.  But here, congressionally appropriated funds are not being withheld in tension with their congressional appropriation.  As explained *supra*, NEH appropriations are "no-year" and are not required to be spent in a particular year.  Nor are funds allocated under formulas to certain types of grantees required to be spent on such grants; NEH by statute has discretion not to spend funds so allocated and may spend the funds in other ways.  20 U.S.C. § 956(f)(6),

Plaintiffs identify no provisions in congressional appropriations legislation that specify that they (or any specific grantees) must continue to receive prior funding in a particular year.  Plaintiffs argue that Congress appropriated "nearly $130 million" to the councils from NEH over the last two years.  Pls.' Mem. 19.  But there is no such appropriation provision in the 2024 Appropriations Bills or 2025 Continuing Resolution.  Further, Congress in establishing the NEH made clear that its appropriation for any fiscal year is not a single-year sum subject to expiration but remains available until

expended. 20 U.S.C. § 960(b)(1). Defendants are not refusing to spend funds that Congress required be spent in 2024 or 2025; the ICA is not implicated.

Because Plaintiffs have no likelihood of success on their ICA claim, this Court should deny their request for a preliminary injunction.

### C. Plaintiffs have no likelihood of success on their APA claims.

#### 1. This Court lacks subject-matter jurisdiction over Plaintiffs' claims concerning grant terminations.

Plaintiffs have no likelihood of success on their APA claims because this Court lacks subject-matter jurisdiction over them. No waiver of sovereign immunity authorizes Plaintiffs to enforce contracts with the federal government in federal district court. Instead, through the Tucker Act, Congress vested the Court of Federal Claims with exclusive jurisdiction over any claim founded upon any express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1).

As the Supreme Court explained this year in *Department of Education v. California*—in a challenge to grant terminations—"the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of Federal Claims jurisdiction" over suits based on any contract with the United States. 145 S. Ct. 966, 968 (2025) (per curiam).

**Page 15**      **Response to Plaintiffs' Motion for Preliminary Injunction**

The Supreme Court in *Department of Education* recognized that the APA's limited waiver of sovereign immunity "d[id]not extend" to the injunction at issue, which the Court described as an "order[] to enforce a contractual obligation to pay money." *Id*. Whether claims are contractually based for purposes of the Tucker Act depends "on the source of the rights upon which plaintiff bases its claims, and the type of relief sought (or appropriate)." *North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir.1994) (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982)). Where claims asserted are based on a contract, seek a declaration of contract rights, or do not exist independent of a contract, they are barred by the Tucker Act. *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646-47 (9th Cir.1998).

Recognizing that *Department of Education* "controls," the D.C. Circuit recently recognized that a district court likely lacked APA jurisdiction in another dispute over an agency's termination of grants because the Court of Claims had exclusive jurisdiction given the inherently contractual nature of the dispute. *Widakuswara*, 2025 WL 1288817 at *3-*5. *Widakuswara* noted that the grant dispute arose when an agency terminated grants, and the district court ordered "specific performance of the grant agreements—a quintessentially contractual remedy." *Id*. at *4. Several subsequent federal district court decisions in the D.C. Circuit have found no likelihood of success

on APA claims challenging federal grant terminations. *Harris Cnty., Texas v. Kennedy*, -- F. Supp. 3d --, No. 25-cv-1275 (CRC), 2025 WL 1707665, *11-*15 (D.D.C. June 17, 2025); *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643, 2025 WL 1865160, *7-*14 (D.D.C. July 7, 2025).

As in *Department of Education v. California*, the grants at issue here are essentially contracts. The statute that created NEH authorizes its "Chairperson, with the advice of the National Council on the Humanities . . . to enter into arrangements, including contracts, grants, loans, and other forms of assistance, for purposes including initiating and supporting research and programs to strengthen the research and teaching potential of the United States in the humanities." 20 U.S.C. § 956(c). But NEH's authorizing statute and the 2024/25 appropriations legislation do not require that NEH pay funding to specific grantees in a particular period. *See*, *e.g.*, 20 U.S.C. §§ 956(f)(6), 960(a)(1)(B), 960(b)(1).

Here, therefore, Plaintiffs' claims to funds for specific grants derive not from these statutory authorities, but from the grants themselves, which NEH had discretion to award. As alleged in Plaintiffs' operative complaint, for the grants at issue, grantees "may ask for funds in advance for a particular expense" but the "majority of funds . . . are reimbursements" from NEH. *See*, Am. Compl. ¶ 56 (describing the grants at issue). In return, the grantees promised to use the funds in accordance with NEH's requirements. *See*

Declaration of Michael McDonald Exh. A, *also available at* General Terms and Conditions for General Operating Support Grants to State and Jurisdictional Humanities Councils https://www.neh.gov/sites/default/files/2024-12/SHC%20TAC_FINAL.pdf (last visited July 15, 2025).

These exchanges of promises constitute government contracts for Tucker Act purposes. *See Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999) ("[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.") (cleaned up).

Further, the relief Plaintiffs seek with respect to the grants is effectively specific performance of the government's funding of the grants—a contract remedy.  Plaintiffs' motion requests an injunction to "return[] NEH grants to state and jurisdictional humanities counsels to the status quo prior to the termination and rescission decisions."  Pls.' Mem. 30.  This a clear specific performance contractual remedy. *See Widakuswara*, 2025 WL 1288817 at *4 (finding that a court's order that grant agreements remain in force or an order to pay money committed by grant agreement is "specific performance"—"a quintessentially contractual remedy"); *Vera Inst.*, 2025 WL 1865160 at *13 (rejecting APA jurisdiction and finding that the requested

remedy of continued payment of grants is "specific performance" and "essentially contractual"). Plaintiffs request a contractual remedy that shows their claims fall under the Tucker Act and must be brought in the Court of Federal Claims.

Plaintiffs cannot evade the Tucker Act's jurisdictional bar by styling their contractual claims as APA claims. *See*, *e.g.*, *Pippenger v. U.S. DOGE Serv.*, No. 25-CV-1090 (BAH), 2025 WL 1148345, at *5 (D.D.C. Apr. 17, 2025) (concluding court was "deprive[d]" of "authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims"); *Sols. in Hometown Connections v. Noem*, No. 25-cv-885, 2025 WL 1103253, at *11 (D. Md. Apr. 14, 2025) (denying motion for emergency relief challenging termination of grants considering Supreme Court's decision in *Department of Education* and concluding that plaintiffs' APA claims were "in essence contract claims"); Order, *Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), ECF No. 30 (staying district court's preliminary injunction involving education-related grants considering *Department of Education*).

Finally, this Court lacks jurisdiction over all of Plaintiffs' claims relating to their grant agreements, whether styled as claims under the APA or as violations of the separation of powers or the ICA. However styled, these claims ultimately relate to the grants themselves, and should be heard in the

**Page 19      Response to Plaintiffs' Motion for Preliminary Injunction**

Court of Federal Claims. *See*, *e.g.*, *Sols. in Hometown Connections*, 2025 WL 1103253, at *10 (rejecting "argument that the source of [plaintiffs'] APA claims in this case is statutory, regulatory and constitutional in nature" and "conclud[ing] that the source of the rights with regards to [plaintiffs'] APA claims here is their respective Grant agreements with [the government]").

In seeking a preliminary injunction, Plaintiffs assert that Defendants cannot rely on jurisdictional arguments. Pls.' Mem. 26-27. But Plaintiffs fail to show that their claims can succeed on the merits. Plaintiffs attempt to liken their case to *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988). But that case, unlike Plaintiffs' case, did not involve contracts or a request for the remedy of specific performance. Here, unlike in *Bowen*, Plaintiffs are seeking to enforce a supposed obligation of NEH to pay money under specific grant agreements. Their claims fall under the Tucker Act and must be brought in the Court of Federal Claims. *See Dep't of Educ.*, 145 S. Ct at 968; *Widakuswara*, 2025 WL 1288817 at *4 (discussing *Department of Education* and concluding that a district court likely lacked jurisdiction to restore terminated grants); *Harris Cnty.*, 2025 WL 1707665 at *15 (rejecting applicability of *Bowen* to contract-related litigation over grant agreements made with executive-branch agencies).

Plaintiffs also make the conclusory statement that Plaintiff Federation has associational standing to sue on behalf of its member organizations

because neither the claims asserted, nor the relief requested, requires the participation or individual members in the lawsuit. Pls.' Mem. 27. But Plaintiffs provide no explanation for how this is so, although it is their burden to establish standing. And notably, venue in Oregon appears inappropriate regarding specific-performance relief for NEH grants to individual members of Plaintiff Federation that are not parties to this case. See Am. Comp. ¶ 33 (asserting Oregon venue only for Plaintiff Oregon Council for the Humanities but not Plaintiff Federation). Plaintiffs' memo indicates that the non-Oregon members of the Federation are impacted locally or within their individual states; there is no tie to the District of Oregon. *See* Pls.' Mem. 13-14.

## 2. Plaintiffs otherwise have no likelihood of success on the merits of their APA claims.

Plaintiffs otherwise have no likelihood of success on the merits of their APA claims because: (1) statutes preclude judicial review of some claims, and other adequate alternative remedies exist for such claims; (2) Plaintiffs have not alleged the requisite discrete, final agency action and, instead, mount an impermissible programmatic challenge; (3) the alleged actions challenged by Plaintiffs' APA claims—the termination of grants, the reduction of agency personnel, the termination of departments, divisions, or programs, and delays or pauses in grant funding—are committed to agency discretion by

law; and (4) Plaintiffs mischaracterize the notice/appeal provisions that are inapplicable in their case.

### a. APA review is unavailable because statutes preclude judicial review, and alternative remedies exist for such review.

APA review is not available to the extent that other "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and the APA only provides a cause of action where "there is no other adequate remedy in a court," 5 U.S.C. § 704. As discussed *supra* and *infra*, the Tucker Act and the statutory scheme for challenging federal employment/personnel actions preclude APA claims here. Moreover, the remedial schemes created by those statutes provide adequate remedies to challenge the grant actions and employment/personnel actions that Plaintiffs put at issue. Additionally, APA review is not available with respect to Plaintiffs' claim that Defendants violated the ICA, as that statute provides for exclusive enforcement by the Comptroller General in the United States District Court for the District of Columbia. *See supra* Argument I.B.

### b. Plaintiffs' APA claims fail because they do not seek judicial review of a discrete agency action.

Plaintiffs' APA claims also fail to the extent they do not identify a discrete and circumscribed final agency action that this Court can redress. Plaintiffs repeatedly characterize their challenge as being to the dismantling of the NEH. *See*, *e.g.*, Pls.' Mem. 1, 8, 16, 20. They challenge a collection of

personnel actions, programmatic activities, and grant funding actions. *See id.*

The APA contemplates judicial review only of "agency action." 5 U.S.C. § 704. As the Supreme Court has explained, a reviewable "action" is limited to the set of "circumscribed, discrete agency actions" identified in the APA's definition of "action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). This definition, while expansive, is "not so all-encompassing as to authorize [courts] to exercise judicial review [over] everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). The APA does not permit "general judicial review of [an agency's] day-to-day operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990), like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). Nor does it authorize courts to oversee "the common business of managing government programs." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006). Instead, Plaintiffs must plead an "identifiable" action and "direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan*, 497 U.S. at 890-91; *see also Norton*, 542 U.S. at 62.

The APA thus contains a prohibition on "systemic challenges," and does not provide the courts "general supervisory authority over executive

agencies." *Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas*, 5 F.4th 997, 1011 (9th Cir. 2021) (cleaned up).  "Plaintiffs either must identify a particular action by [a federal agency] that they wish to challenge under the APA, or they must pursue their remedies before the agency or in Congress." *Id*. at 1012.

Here, Plaintiffs present the type of systemic, wholesale challenge that the APA forbids. Plaintiffs do not simply challenge the initial but since-rescinded termination of the Oregon Council for the Humanities' NEH grant (which, as discussed *supra*, this Court lacks jurisdiction to review).  Instead, they seek review of NEH actions regarding dozens of other grants to individual councils in other states, along with the reduction of agency personnel and NEH changes to its organization structure.  In essence, Plaintiffs' APA claims challenge NEH's entire recent courses of conduct. That is the opposite of the discrete, agency action that is required for review under the APA. *See Lujan*, 497 U.S. at 891.

Further, to the extent that Plaintiffs challenge NEH's April 2025 grant terminations to the humanities councils as "final" agency action, that is incorrect, because the grant terminations were largely rescinded by NEH. The terminations were not the consummation of the agency's decisionmaking process; they were superseded by NEH in June 2025.

**Page 24**    **Response to Plaintiffs' Motion for Preliminary Injunction**

To the extent Plaintiffs argue that the "dismantling" of the NEH is a "discrete" final agency action, that assertion lacks merit. The D.C. Circuit rejected that argument in *Widakuswara*, explaining that the "dismantling plaintiffs allege[d]" in that case was "a collection of 'many individual actions' that cannot be packaged together and 'laid before the courts for wholesale correction under the APA.'" 2025 WL 1288817, at *3 (quoting *Lujan*, 497 U.S. at 893).

The operative complaint reflects that Plaintiffs seek wholesale judicial review of the government's management of NEH—its allocation of resources and termination of grant agreements, its day-to-day decisions about staffing, and changes to its organizational structure—rather than review of a discrete action. Addressing the claims in each case would require the Court to supervise agency activities, determine how the agency should accomplish statutory functions, and second-guess grant determinations that were made considering NEH priorities. Such review would circumvent the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton*, 542 U.S. at 66-67.

### c. APA review is unavailable because the challenged actions are committed to agency discretion by law.

APA review is also unavailable to Plaintiffs because the actions Plaintiffs challenge are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). None of the authorities Plaintiffs cite limit NEH's discretion to make independent decisions about staffing and organizational structure, the amount of appropriations to expend during a given period, and whether to actually grant funds that were allotted under formulas to particular categories of grantees.

Courts have explained that agency action is "committed to agency discretion by law" when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," rendering "meaningful judicial review . . . impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is true "even where Congress has not affirmatively precluded review." *Heckler*, 470 U.S. at 830. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency determination, *see id.*

The Act establishing NEH is such a statute. For one thing, it authorizes the NEH Chairperson to "enter into arrangements, including contracts, grants, loans, and other forms of assistance" aimed at various humanities-related objectives—but does not require NEH to fund particular grants even if funds are allotted to such grantees, maintain specific levels of staffing, create or retain particular programs or departments, or fund grants within any given time frame. *See* 20 U.S.C. § § 956(c), 956(f)(6), 960(b)(1). *See also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Fund*, 435 U.S. 519, 545 (1978) (explaining that a court may not "dictat[e] to the agency the methods, procedures, and time dimension" to make an agency decision).

Moreover, the Act's authorization to fund grants encompasses broadly drawn topics and guidelines that would not provide a meaningful rubric for court review. For example, the Act authorizes the chairperson to administer grants pertaining to: "the pursuit of a national policy for the promotion of progress and scholarship in the humanities"; "research and teaching potential of the United States in the humanities"; "training and workshops in the humanities"; "programs and research" with "substantial scholarly and cultural significance"; and programs and research that "reach, or reflect the diversity and richness of our American cultural heritage." 20 U.S.C. § 956(c). The statute thus gives the agency wide latitude to enter into grant agreements that serve any of several expansive statutory goals.

**Page 27**    **Response to Plaintiffs' Motion for Preliminary Injunction**

### d. Plaintiffs' "contrary to law" APA claim is premised on notice/appeal provisions that are inapplicable in their case.

For their "contrary to law" APA claims, Plaintiffs rely heavily on their assertion that NEH terminated grants without the notice, opportunity for hearing, or right of appeal that is supposedly required by statute. *See*, *e.g.*, Pls.' Mem. 20, 21, 22-23.

Plaintiffs are incorrect. Plaintiffs rely on the Act at 20 U.S.C. § 956(f)(7) for their assertion that NEH failed to provide required notice and opportunity to be heard. But that provision only applies in the following enumerated circumstances: when a grantee's compliance with the Act is at issue; when a grantee's compliance with the terms and conditions of an approved plan or application is at issue; or when it is at issue that funds may have been diverted from the purposes for which they are allotted or paid. 20 U.S.C. § 956(f)(7).

These enumerated statutory circumstances are not applicable to the grants here. Instead, NEH terminated the grants pursuant to 2 C.F.R. § 200.340(a)(4), which allows termination "if an award no longer effectuates the program goals or agency priorities." Neither the Act nor the regulations required advance notice and opportunity to be heard in these circumstances. Instead, the regulations require that NEH "provide written notice of

termination" to the grant recipient—2 C.F.R. § 200.341(a), and there is no question that NEH met this requirement.

Plaintiffs are also incorrect that NEH violated grantees' statutory or regulatory right to an administrative appeal. That is because the applicable regulations provide for such a right only in circumstances where NEH initiates "a remedy for noncompliance." 2 C.F.R. § 200.342. Here, NEH did not find noncompliance by the grantees but instead found that their awards no longer effectuated the program goals or agency priorities.

Finally, for their "contrary to law" APA claim, Plaintiffs argue that NEH's grant actions violated a formula in 20 U.S.C. § 956(f)(4). Pls.' Mem. 23. Plaintiffs are wrong. As NEH noted in rescinding its April 2025 grant terminations, it is following a congressional requirement to fund section 956(f) activity at not less than 20% of the agency's overall appropriation. 20 U.S.C. § 960(a)(1)(B). Further, the allocation formulas in section 956(f)(4) are not an appropriation requirement. Instead, Congress provided in section 956(f)(6) that NEH has discretion not to fund allotted amounts under section 956(f)(4) and may spend these amounts on other agency programs. Finally, NEH's appropriation is "no-year" and need not be spent in any fiscal year. *See supra* Argument I.A.

Page 29     **Response to Plaintiffs' Motion for Preliminary Injunction**

### e. Plaintiffs' arguments for their "arbitrary and capricious" APA claim are unpersuasive.

Plaintiffs also argue that NEH violated the APA because it did not provide "advance notice" that it was changing its "policy" regarding grants. Pls.' Mem. 25. But the cases they cite do not establish a requirement of advance notice, and the applicable regulation is clear that a grant may be terminated if NEH finds it no longer effectuates program goals or agency priorities. *See* 2 C.F.R. § 200.340(a)(4).

Nor are Plaintiffs "regulated entities" as in *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025). The *Wages & White Lion* framework relates to an APA claim—such as the challenge in that case to an agency's supposed policy change regarding premarket procedures for flavored e-cigarette liquids—rather than claims relating to disputes with the government over funding in specific grant agreements.

In sharp contrast to the APA backdrop in *Wages & White Lion*, Plaintiffs are parties that chose to contract with NEH; they applied for and entered into grant agreements with NEH, which NEH terminated under terms and conditions relating to agency's needs and priorities. *See* Declaration of Michael McDonald Exh. A, *also available at* General Terms and Conditions for General Operating Support Grants to State and Jurisdictional Humanities Councils

https://www.neh.gov/sites/default/files/2024-12/SHC%20TAC_FINAL.pdf (last

visited July 15, 2025).

Plaintiffs' grant agreements with NEH establish the parameters of

their contractual relationship with NEH. NEH's decisions regarding grant

funding were made under these contracts, and it is misguided to consider

APA "reliance interests" outside the terms and conditions of the contracts.

>    **D.    This Court lacks subject-matter jurisdiction over
>         employee termination and personnel-related claims.**

Regardless of how they are labeled as claims, this Court lacks

jurisdiction over Plaintiffs' assertions regarding the "firing of staff" at NEH

and the "elimination or near elimination of entire divisions" at NEH (*see* Am.

Compl. ¶ 174; Pls.' Mem. 5).

Congress has established comprehensive statutory schemes for

adjudicating employment disputes with the federal government. *See*, *e.g.*, 5

U.S.C. §§ 1204, 7121-22, 7701 (Merit Systems Protection Board); *id*. § 1214

(Office of the Special Counsel); *id*. § 7104 (Federal Labor Relations

Authority); 41 U.S.C. §§ 7103–05 (Civilian Board of Contract Appeals). These

remedial schemes provide the exclusive procedures by which litigants may

pursue employment-related claims. *See Elgin v. Dep't of the Treasury*, 567

U.S. 1, 5, 10-15 (2012) ("The [Civil Service Reform Act ("CSRA")] established

a comprehensive system for reviewing personnel action taken against federal

employees" and provides the "exclusive" avenue to judicial review of such claims).

Further, "[f]ederal employees may not circumvent [these statutes'] requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). "[T]hat principle applies to a systemwide challenge to an agency policy . . . just as it does to the implementation of such a policy in a particular case." *Nyunt v. Chairman, Broad. Bd. Of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (citation omitted).

In *Widakuswara*, as in this case, the plaintiffs challenged agency personnel actions in addition to grant terminations. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025). There, the plaintiffs attempted to avoid the framework applicable to personnel actions by arguing that, rather than challenging individual personnel actions, they challenged the "wholesale shuttering of [Voice of America]" and the "dismantl[ing of] an entire federal agency." *Id.* at *3. The D.C. Circuit observed that "plaintiffs may not use the APA to mount 'wholesale' challenges to an agency's 'entire program,'" but rather "[t]he APA cause of action, like its sovereign-immunity waiver, provides for judicial review of 'discrete agency actions.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) and *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 64 (2004)).  Thus, while the employees might have "viable, discrete claims" with respect to "individual personnel actions, those claims must be pursued through other remedial channels." *Id*.  This reasoning is directly applicable here.

Finally, Plaintiffs' factual representations regarding employment/personnel matters at NEH rely on inappropriate evidence. First, Plaintiffs rely on pseudonymous declarations filed without leave of court. *See* Pls.' Mem. 5, 8, 9 (relying on declarations filed at ECF 12-13). Absent extraordinary circumstances, "witnesses do not testify anonymously under our system of laws." *Doe v. Los Angeles Unified School Dist.*, No. 2:16-cv-00305-CAS (JEMx), 2017 WL 797152, *9 (declining to consider declarations).  Second, Plaintiffs rely on a news article for the truth of their factual representations. *See* Pls.' Mem. 8 n.8.  This is not appropriate. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts make take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (cleaned up).

## II.    Plaintiffs fail to demonstrate a likelihood of irreparable harm that favors a preliminary injunction.

In addition to establishing the merits element above, to obtain a preliminary injunction, Plaintiffs must "demonstrate that irreparable injury

is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).  Plaintiffs fail to prove this necessary element.

Plaintiffs request an extraordinary order to unwind what has already occurred—a so-called "mandatory" injunction.  Such an injunction is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (cleaned up).  In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (cleaned up).

Plaintiffs claim a likelihood of irreparable harm because some non-party state humanities councils have an "uncertain" financial situation and "are operating on reserve funds," and others have suffered financial hardship. Pls.' Mem. 28.  But it is well settled that economic harm does not, in and of itself, constitute irreparable harm.  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Economic damages are not considered irreparable if the injury can later be remedied by a damage award.  *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

Plaintiffs fail to prove that extreme or very serious damage will result if this Court denies their requested injunction.  Instead, Plaintiffs may seek full recompense under the Tucker Act in the Court of Federal Claims.  In that court, Plaintiffs have access by statute to "an entire remedy" that may include "orders directing restoration to . . . position" and "such orders may be issued to any appropriate official of the United States."  28 U.S.C. § 1491(a)(2).  Further, that court has "the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  *Id*.

As the Supreme Court indicated in early April 2025 in *Department of Education v. California*—more than a month before Plaintiffs filed this action—grant termination challenges are likely outside district court APA jurisdiction.  145 S. Ct. 966, 968 (2025).

Ignoring the available Court of Federal Claims, nonetheless, Plaintiffs argue that this Court should grant a mandatory injunction because the state humanities councils have suffered damaged reputations and stability because of NEH's grant actions.  Pls.' Mem. 28.  Although reputational injury can constitute irreparable harm, Plaintiffs fail to adduce evidence showing that such harm is imminent, and may not establish reputational harm based on pronouncements that are "grounded in platitudes rather than evidence." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir.

2013).  Notably, Plaintiffs represent that without an injunction, NEH's grant terminations "will likely cause" humanities programming to close entirely across states, but fail to cite any evidence supporting this speculation.  Pls.' Mem. 30.

It is also salient that NEH has discretion to choose when and how to support the humanities through specific grants within the agency's appropriation.  Nor is it NEH's role to be the primary funder of state and local humanities activities.  The legislation establishing the NEH found that the encouragement and support of national progress and scholarship in the humanities is "primarily a matter for private and local initiative."  20 U.S.C. § 951(2).

Plaintiffs argue that "all Americans" will suffer irreparable harm if grants are not reinstated.  Pls.' Mem. 29.  But abstract harm that might befall unnamed third parties does not constitute irreparable harm in the preliminary injunction context; irreparable harm must instead be connected specifically to the parties before the court.  *See*, *e.g.*, *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021).

The D.C. Circuit's recent ruling in a grants-restoration case supports a finding against Plaintiffs here on irreparable harm.  In *Widakuswara*, 2025 WL 1288817, the court of appeals in assessing irreparable harm found that the grantee plaintiffs "may seek to recover any wrongfully withheld grant

funds in the [Court of Federal Claims]." *Id.* at \*5. (noting that the Supreme
Court has "made clear that the [Court of Federal Claims] is likely the only
forum open to [plaintiffs]." Notably, *Widakuswara* found irreparable harm to
the government in the grants-restoration context, when the district court
required no injunction bond, and the government therefore could not recover
restored grant funding even if it were to prevail in its appeal. *Id.*

Because any financial harms Plaintiffs have suffered or will suffer due
to NEH's actions on their grants are recoverable in the Court of Federal
Claims, such harms do not establish irreparable injury. *See Dep't of Educ. v.
Cal.*, 145 S. Ct. at 969 (finding that "respondents would not suffer irreparable
harm" where "they have the financial wherewithal to keep their programs
running" and "can recover any wrongfully withheld funds through suit in an
appropriate forum").

For these reasons, this Court should deny Plaintiffs' motion.

### III.  Neither the balance of equities nor the public interest favors a preliminary injunction.

Plaintiffs also fail to meet their burden to prove that both the balance
of equities and public interest support their request for the extraordinary
remedy of a mandatory injunction. Where the government is a party, the
balance of equities and public interest elements merge. *See Drakes Bay
Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Courts "should pay

particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (cleaned up).

The balance of equities and public interest factors do not tip to Plaintiffs. It is true that the public has an interest in the Executive Branch's compliance with congressional mandates. At the same time, "the public has an interest in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress." *Widakuswara*, 2025 WL 1288817 at *6. Because "grant disputes directly concern the public fisc, Congress has limited the resolution of these potentially costly claims to specialized tribunals" such as the Court of Federal Claims. *Id.* (finding for the government).

The injunction Plaintiffs seek would disrupt NEH's efforts to implement the President's directives while complying with the agency's statutory obligations. Executive Order 14222 required, among other things, that agency heads review "all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify [them] to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of [the] Administration." Exec. Order. No. 14222, 90 Fed. Reg. 11095 (2025). Plaintiffs' requested preliminary injunction would disrupt NEH's lawful execution of that process.

Contrary to Plaintiffs' suggestions, imposing the requested injunction would do far more than simply require the government to maintain NEH as

the law requires.  *See* Pls.' Mem. 30.  As discussed, NEH has continued to carry out its statutory functions, and NEH is not required to disburse the entirety of the funds appropriated by Congress by any date certain or to pay out grants even if funds are otherwise allocated for those grants.  *See supra* Argument I.A.  Accordingly, Plaintiffs are not requesting that this Court merely require Defendants to abide by the law; they, instead, are effectively asking this Court to step in and direct NEH as to when, how, and at what specific levels it must fund grants—an exercise that would interfere with the agency's lawful discretion.

For further reasons, the injunction Plaintiffs seek is not well advised in equity.  Plaintiffs say that the public interest is served by maintaining the status quo, but neglect to acknowledge that their requested injunction is a mandatory injunction that goes beyond maintaining the status quo.  See Pls.' Mem. 30.  Where NEH is legally entitled to make decisions about the timing and specific levels for funding grants but is nonetheless ordered to release funds into existing grants, such funds may not be retrievable afterwards. *See Dep't of Education*, 145 S. Ct. at 968-69 (noting "the Government's representation that it is unlikely to recover the grant funds once they are disbursed").  Plaintiffs, in contrast, "can recover any wrongfully withheld funds through suit in an appropriate forum" if they prevail on their claims. *Id*. at 969.  *See also Harris Cnty., Texas, v. Kennedy*, -- F. Supp. 3d. --, No. 25-

cv-1275 (CRC), 2025 WL 1707665, *19 (D.D.C. June 17, 2025) ("Should it turn out that the government is not required to pay out these grants, then the government would likely be left without any means of recovering large sums of taxpayer money.").

Accordingly, the balance of the equities and the public interest do not favor Plaintiffs, and this Court should deny Plaintiffs' motion.

## IV.    Any injunction should be narrowly tailored to the harms to the named plaintiffs.

If this Court were to consider entering preliminary relief here, that relief should be narrowly tailored to the grant terminations made directly to the two plaintiffs in this action.

Plaintiffs seek nationwide relief, because Plaintiff Federation has members all over the country that are affected by NEH grant terminations. Such a sweeping remedy is inappropriate, as explained below. That remedy is also inappropriate because it exposes the government to the distinct likelihood that it would be left without any means of recovering a large sum of taxpayer money if it turns out the government is not required to pay out these grants. *See Harris Cnty.*, 2025 WL 1707665, *19.

### A.    Historical equity practice limits the scope of any injunction.

In *CASA*, the Supreme Court addressed "universal injunctions," which it defined as injunctions that "prohibit enforcement of a law or policy against

anyone," as opposed to injunctions "prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit." *Trump v. CASA, Inc.*, 606 U.S. __ (2025), slip op. ("Op.") 1. The Supreme Court explained that universal injunctions "likely exceed the equitable authority that Congress has granted federal courts," as universal injunctions have no historical analogue in equity practice. Op. 1-2, 5-11. The Court reiterated its prior pronouncement that "'[n]either declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.'" Op. 8 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

The injunctive relief Plaintiffs seek is impermissibly broad because it violates the principle, reinforced in *CASA*, that injunctive relief can only be accorded to the "plaintiffs in the lawsuit." Op. 1-2, 5-11. Plaintiffs seek a mandatory injunction to restore not only the Oregon Council for the Humanities' (existing) grant to a higher prior level, but to similar restore grants made to a host of state councils that are not parties in this action. Such an injunction goes too far. Plaintiff Federation is not in privity with the government and lacks any rights under the grants that NEH entered with humanities councils. The Federation is neither a party to those grant agreements nor an intended third-party beneficiary. The Federation lacks a

legally protected interest in the grant agreements that NEH entered with individual councils, which are nonparties to this case except the Oregon Council for the Humanities.

Pursuant to the Court's opinion in *CASA*, if Plaintiffs demonstrate an entitlement to any injunctive or declaratory relief, that relief should be tailored to address only the termination of grants previously awarded to Plaintiffs directly. Op. 1-2, 5-11, 16 (explaining that the "equitable tradition has long embraced the rule that courts general may administer complete relief between the parties") (quotations omitted).

### B. The principle laid out in *CASA* applies to any equitable relief Plaintiffs seek under the APA.

If Plaintiffs argue that the principle reaffirmed in *CASA* does not apply to the relief they seek under the APA, such an argument is misguided. The Supreme Court in *CASA* noted that the decision did not resolve "the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." Op. 11 n.10 (citing 5 U.S.C. § 706(2), which authorizes courts to "hold unlawful and set aside agency action"). As discussed below, however, nothing in the APA authorizes a court to vacate an agency rule, and relief in APA cases is limited to the traditional scope of equitable relief. Accordingly, the scope of relief available under the APA here must be consistent with the principle articulated in *CASA*. Even if the

Court were to find that the APA "allows federal courts to vacate federal agency action," Op. 11 n.10, this Court still should afford only party-specific injunctive relief.

While the APA authorizes courts to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2), that language may not be equated with the wholesale vacatur of agency action. There is nothing in the APA that permits vacatur of agency action, much less the expansive unwinding of NEH's grant actions that Plaintiffs seek here. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring) (in a case in which states sought vacatur of executive actions based on alleged APA violations, writing that the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise)"). The history and structure of the APA support that the better reading of "set aside" is that in reaching a decision, a court should "disregard" the action taken by the agency in determining the outcome of a case. *Texas*, 599 U.S. at 695 (Gorsuch, J., concurring) ("Routinely, a court will disregard offensive provisions like these and proceed to decide the parties' dispute without respect to them."). Here, for example, assuming *arguendo* that the Court had jurisdiction over Plaintiffs' grant-action claims, that might mean that the Court would "disregard" Executive Order 14222 in determining whether to enjoin NEH's action on

Plaintiffs' individual grants.[4]

The structure of the APA likewise suggests that the "set aside" language in Section 706 does not permit a remedy of vacating agency action. Section 706 is the "Scope of review" section of the APA, not the remedies section. "And ordinarily, when we think about the scope of a court's review, we do not think about the remedies that the court may authorize after reaching its judgment on the merits. Instead, we think about the court's decisional process leading up to that judgment." *Id.* at 696. From that perspective, reading "set aside" to mean "disregard" rather than "vacate" fits squarely within how a Court goes about reviewing the questions at issue. *See id.* ("Understanding 'set aside' as a command to disregard an unlawful rule in the decisional process fits perfectly within this design. Understanding the phrase as authorizing a remedy does not.").

Indeed, the "set aside" language does not appear in Section 703 of the APA, which addresses the remedies available under the APA. Section 703 permits "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703.

---

[4] NEH carried out the initial grant terminations at issue here under Executive Order 14222, which required that agency heads terminate or modify existing contracts and grants to reduce overall federal spending. *See* Executive Order 14222, 90 Fed. Reg. 11095 (2025).

"Conspicuously missing from the list is vacatur." *Texas*, 599 U.S at 698 (Gorsuch, J., concurring). It would not make sense for Congress to have listed most remedies in Section 703 "only to bury another (and arguably the most powerful one) in a later section addressed to scope of review." *Id.*

Defendants acknowledge that the Ninth Circuit has on occasion permitted the vacatur of agency regulations under the APA. *See, e.g., East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2021). However, such decisions postdate the APA by more than four decades and are not probative of its original meaning and legislative intent. Nor did such decisions confront or reconcile universal vacatur of an agency's action with the APA's text, structure and history. They therefore do not bind this Court or preclude this Court from reaching a different conclusion. *See Texas*, 599 U.S. at 701 (Gorsuch, J., concurring) ("At the end of the day, the States fall back on lower court decisions. 'For more than 30 years,' they say, 'vacatur has been the ordinary result when the D.C. Circuit determines that agency regulations are unlawful.' . . . Doubtless, to the extent those decisions are carefully reasoned, they merit respectful consideration. But, equally, they do not bind us.").

Moreover, to the extent Plaintiffs may rely on Justice Kavanaugh's concurring opinion in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024), which would permit vacatur as relief in an APA

action, that decision necessarily did not consider the Court's later ruling in *CASA*. With respect to statutory interpretation on the meaning of "set aside," Defendants respectfully submit that the concurring opinion by Justice Gorsuch in *Texas* is more persuasive than Justice Kavanaugh's concurring opinion in *Corner Post*.

If the Court agrees that the APA does not authorize vacatur and that the remedies available under the APA are limited to traditional equitable remedies, pursuant to Section 703 of the APA, *CASA* then limits the relief available under the APA to "the party-specific principles that permeate our understanding of equity." Op. 8. Thus, to the extent Plaintiffs' request for an injunction is premised on the APA, any injunction should be carefully tailored to addressing the grants awarded to Plaintiffs themselves.

But even if the Court reads Section 706 to authorize equitable power to vacate agency action, it still should not grant the sweeping relief sought by Plaintiffs. Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic

departure from the traditions of equity practice," *Hecht*, 321 U.S. at 3299.

Again, as reflected in *CASA*, there is no basis in equity for a universal

injunction that goes beyond remedying the direct harms incurred by the

plaintiffs who have brought the lawsuit.  Op. 5-11.  In *Texas*, Justice

Gorsuch employed a similar analysis as that articulated in *CASA*, that

"[t]raditionally, when a federal court finds a remedy merited, it provides

party-specific relief, directing the defendant to take or not take some action

relative to the plaintiff" and that "[i]f the court's remedial order affects non-

parties, it does so only incidentally."  *See Texas*, 599 U.S. at 693 (Gorsuch,

J., concurring); *accord* Op. 10 ("The bottom line?  The universal injunction

was conspicuously nonexistent for most of our Nation's history.  Its absence

from 18th and 19th-century equity practice settles the question of judicial

authority."); Op. 16 ("While party-specific injunctions sometimes advantage

nonparties, they do so only incidentally.") (citation, quotations, and

alterations omitted).  To grant universal relief under the auspices of vacatur

would be inconsistent with the tenets on which the Supreme Court's *CASA*

analysis is founded.  *Compare Texas*, 599 U.S. at 703 (Gorsuch, J.,

concurring) ("[U]niversal relief, whether by way of injunction or vacatur,

strains our separation of powers. It exaggerates the role of the Judiciary in

our constitutional order, allowing individual judges to act more like a

legislature by decreeing the rights and duties of people nationwide.") *with*

Op. 26 ("[F]ederal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies consistent with the authority Congress has given them."). Accordingly, even if this Court recognizes vacatur as a potential remedy under the APA, the Court should consider it in the context of the equitable analysis reiterated in *CASA*. Consistent with traditional principles of equity, any equitable remedy the Court grants here—even vacatur—should apply only to the named parties. *See* Op. 5-11.

## V.    Any injunctive relief should be stayed pending appeal and be conditioned on a bond.

To the extent this Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized by the U.S. Solicitor General, or at a minimum, administratively stayed for a period of seven days to allow the government to seek an emergency, expedited stay from the court of appeals if an appeal is authorized.

Defendants also respectfully request that any injunctive relief be conditioned on a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

**Page 48      Response to Plaintiffs' Motion for Preliminary Injunction**

A bond is appropriate here given that any preliminary injunction would potentially mandate that the government spend money not recoupable once distributed. *See Dep't of Educ. v. Cal.*, 145 S. Ct. 966, 969 (2025) (finding that the plaintiffs "have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed," when no grantee promised to return withdrawn funds should its grant termination be reinstated and the district court declined to impose bond).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary injunction.

DATED this 15th day of July 2025.

Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney
    Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b), because it comprises 10,976 words, based on the word-count of the word processing system used to prepare the memorandum.  This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

Dated this 15th day of July 2025

Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant U.S. Attorney